PATON v. PORT HURON ENGINE & THRESHER CO.

1. Master and Servant—Workman's Compensation Act—Industrial Accident Board Trier of Facts.

   In proceedings under the workmen's compensation act, the industrial accident board is the trier of the facts.

2. Same—Finding of Board: Conclusive if Supported by Facts.

   Where there was evidence to support the finding of the board that the death of plaintiff's decedent was accidental, caused by an electric shock, rendering the employer liable under the workmen's compensation act, said finding is conclusive upon this court on certiorari to review same, although there was also evidence which would have supported a finding that he died of natural causes, the medical testimony being conflicting.

On conclusiveness of findings as to whether injury was one "arising out of and in the course of the employment," see note in L. R. A. 1918F, 915.

Certiorari to Industrial Accident Board.  Submitted March 30, 1921.    (Docket No. 72.)    Decided May 5, 1921.

Isabel M. Paton presented her claim for compensation against the Port Huron Engine & Thresher Company for the accidental death of her husband in defendant's employ.  From an order awarding compensation, defendant and the Michigan Mutual Liability Company, insurer, bring certiorari.  Affirmed.

*Beaumont, Smith & Harris* (*Hal H. Smith* and *Albert E. Meder*, of counsel), for appellants.

*Burt D. Cady*, for appellee.

CLARK, J.  The board found that the death of plaintiff's husband, a boiler maker in the employ of the defendant employer, was accidental and arising out of and in the course of the employment.  Compensation was awarded.  Defendants here contend that as a matter of law the proofs do not support the findings and their counsel say that this case falls within the rule announced in *Chaudier* v. *Stearns & Culver Lumber Co.*, 206 Mich. 433.

"Where two inferences equally consistent with the facts arise out of established facts, one involving liability on the part of the employer under the act, and the other relieving him from liability, the applicant must fail."  Citing, also, *DeMann* v. *Engineering Co.*, 192 Mich. 594; *Hills* v. *Blair*, 182 Mich. 25; *Draper* v. *Regents of University*, 195 Mich. 449; *McCoy* v. *Michigan Screw Co.*, 180 Mich. 454 (L. R. A. 1916A, 323).

The language quoted is an elaboration of the rule that a finding must have support in fact; it may not rest upon conjecture.  In this case there is evidence to support defendants' contention that the death was not accidental and there is evidence to support the

finding of the board.   Counsel have summarized the evidence supporting their contention and that supporting the board's finding to show that an inference favoring their contention is as reasonable or more reasonable than one opposed to it.   But this does not put the finding, having evidence to support it, into the realm of conjecture.   Generally an issue of fact consists of a direct affirmative allegation on one side and a direct negative on the other.   See 2 Bouvier's Law Dictionary (3d Ed.), p. 1687.

The statute, 2 Comp. Laws 1915, § 5465, provides:

"The findings of fact made by said industrial accident board acting within its powers, shall, in the absence of fraud, be conclusive."   *   *   *

Of this statute counsel say:

"That this section of the act is not authority for loosely stating that if there is any testimony in the record to support the board's findings, such findings are final is apparent if any effect is given to the words of the statute; 'within its powers.'   *   *   *

"To be more specific, in those cases in which there are two inferences equally consistent with the facts arising out of established facts, one making the employer liable, and the other relieving him from liability, the mere fact that there is some evidence in the record to support the inference drawn by the board favorable to applicant does not dispose of the case because applicant has not established the burden of proof."

If we are to determine when the plaintiff has met the burden of proof we must try the facts.   But we have held again and again that the board is the trier of the facts.   See *Kropf* v. *Michigan Bean Co.,* 211 Mich. 454; *Ginsburg* v. *Adding Machine Co.,* 204 Mich. 130; *Wilson* v. *Phoenix Furniture Co.,* 201 Mich. 531; *Deem* v. *Kalamazoo Paper Co.,* 189 Mich. 655; *Perdew* v. *Nufer Cedar Co.,* 201 Mich. 520; *Vogeley* v. *Detroit Lumber Co.,* 196 Mich. 516.

We think the evidence adduced by plaintiff furnished a basis in fact for the finding of the board. Such evidence is reviewed briefly. George Paton, plaintiff's husband, 38 years of age, strong, who had always enjoyed good health, a boiler maker who had worked as regularly as boiler makers usually do, and in this employment about 10 years, was found dead in the fire box of a boiler at the plant of the defendant employer at Port Huron on August 14, 1919. In a room about 60 feet by 120 feet in which other employees also worked, on this day Paton was engaged in testing, caulking and riveting a boiler. Water pressure was applied to the boiler to show leaks. The front end of the boiler was set upon a bench 3½ feet from the floor. The other end was on a block 18 inches from the floor. The boiler was connected to the ground by a water pipe. The fire box in which he was working was 36 inches long and 24 inches wide and 40 inches high. He entered the fire box through the fire hole 13¼ by 14½ inches. Below was the draught hole 6 by 10 inches. Paton had a plank on the bottom of the fire box and a box about 6 inches square on which to sit while working. The caulking was done by means of an air hammer, about 20 inches long, weighing 8 or 10 pounds, operated by compressed air supplied through a hose of rubber and canvas. A tool about 7 inches long, weighing about 12 ounces, was used. Paton held the hammer in his right hand, the tool in his left. For light an extension cord ran from the ceiling of the room and was hung on a rivet at the top of the inside of the fire box. There was a wire cage around the electric light bulb and a handle of wood about 4 inches long through which the cord ran. The cord was insulated. The light could be operated by a button in the cord outside the boiler. Paton seemed well that morning, ate lunch about 9 o'clock, and returned to his work in the fire box.

Shortly afterward another employee looked in the fire box and saw the electric light burning. Paton was sitting in a corner; a little stream of water going past his face. There was water in the bottom of the fire box not quite over the plank. The employee jokingly remarked that Paton was drowning in there. Pontine, Paton's working partner, then recalling that he had not heard Paton's hammer for "about a minute" went to the door of the fire box. Paton was dead, sitting about in his usual position, leaning against the boiler, the hammer across his chest, the tool in his hand. In removing Paton's body from the fire box and in removing the light cord employees suffered electric shocks. The electrician of the plant later examined the light cord and said it was wet and leaking. Seemingly because of the water and dampness electric shocks were not uncommon in the work. From this same cord witness Pontine had received a shock before the day of the accident. The current was alternating. The voltage was 110. Dr. Howard, employer's physician, sent for a pulmotor. It was not used but other means of artificial respiration were attempted. Dr. Howard testified:

"*Q.* Do you know what is done in the case of a person who has received an electric shock sufficient to render him unconscious?

"*A.* Yes.

"*Q.* What is done?

"*A.* Same procedure as you use for a drowning person.

"*Q.* The same as you used that day?

"*A.* Yes."

There was much testimony of a burn on one of Paton's hands and some testimony that it had been caused by electricity. Physicians did a *post mortem.* Other physicians examined the body later. The medical testimony is conflicting but there is testimony

sustaining the finding of the board of death by electric shock, and this finding also has some support in the conflicting testimony of electrical experts.

The award is affirmed, with costs to the plaintiff.

STEERE, C. J., and MOORE, WIEST, FELLOWS, STONE, BIRD, and SHARPE, JJ., concurred.