No. 477

First Circuit

CROW v. RAYMOND CONCRETE PILE CO.

(June 28, 1929. Opinion and Decree.)
(October 10, 1929. Rehearing Refused.)
(December 2, 1929. Writ of Certiorari and Review Refused by Supreme Court.)

Miller & Heintz, of Covington, attorneys for plaintiff, appellee.

H. Sellers & Eugie V. Parham, and Edw. Rightor, all of New Orleans, attorneys for defendant, appellant.

ELLIOTT, J. Levi L. Crow, employed by the Raymond Concrete Pile Company in the work of constructing the Watson-Williams bridge across Lake Pontchartrain, fell through the bridge structure while carrying on his shoulder a load of iron pipe and was severely injured. He was engaged at the time in the work he was employed to do. Slivers of steel in some way got into his eye as a result of his fall, but he sustained other and more important injuries to his side and in the hernial region of his abdomen.

The occurrence took place on or about September 29, 1927. He was receiving at the time forty cents an hour or $3.20 per day, in amount, $19.20 per week as wages. He claims that his injuries have produced in him a permanent total disability to do work of any reasonable character and that he is entitled to 65 per cent of his weekly wages for 400 weeks under the Employers' Liability Act of this State.

Defendant denies plaintiff's averments. Defendant, further answering, avers that if plaintiff received an injury which resulted in a hernia, it did not occur on September 29, 1927. It was established on the trial without dispute, that the plaintiff received his injuries as alleged in his petition, and whether it happened on the 26th, 27th or 29th of September, 1927, it makes no difference in the case.

Plaintiff in some way got slivers of steel in his eye when he fell, but his serious injuries were to his side and abdominal region. His sudden fall was immediately followed by severe pain in his side and hernial region. In that respect, there was such prostration that he was compelled to cease work immediately. The facts were of such severity that same were noticed by claimant and communicated at the time to his employer's foreman having charge over him. The statute, Act 85 of 1926, provides that the descent of the hernia must immediately follow the injury and seems to contemplate that the descent must be immediately noticed by the party injured and communicated to his employer. The plaintiff was not aware immediately after the injury, that he had sustained a hernia, nor was his employer so informed, consequently while the technical requirement of the statute on the subject of hernia was not accomplished, still it appears that plaintiff's injury in the hernial region was immediately noticed as stated and observed by his employer there and then, but it was not known at the time by the plaintiff nor by his foreman that he had sustained a hernia. The plaintiff acting on the advice of his foreman laid down. The pain in his side and abdominal region subsided after he had laid down and remained quiet for a while, but his eye continued to pain him. Thereupon the foreman had him carried ashore and sent him to a local physician in the employ of the defendant.

The doctor treated his eye, and on the occasion of his first visit, plaintiff did not complain to the physician of any pain

in his side or abdomen. But that night his side and abdomen pained him severely, so the next morning he went to the doctor on that account and the physician applied an adhesive strap to his side. The physician states in his report concerning plaintiff's condition, brought up in the record, that he treated plaintiff about two o'clock p. m., September 29, 1927. He found foreign body in his eye and strain of abdominal muscles from lifting. Consequently, a visit the next morning after the first, was within the forty-eight hours provided for by the statute on the subject of hernia. According to the evidence, the local ·physician treated plaintiff for his side and abdomen for about ten days and then sent him to be examined by defendant's physicians in the city of New Orleans. At the time he sent plaintiff to New Orleans, he was not aware, nor was the .plaintiff, that he had sustained a hernia. The physicians in New Orleans discovered that plaintiff had sustained a small inguinal hernia and supplied him with a truss.

The physician in New Orleans says that in his examination, he found a slight swelling in plaintiff's left side which he took to be caused by the inguinal hernia. Plaintiff then returned home, upon which, the local physician also established the hernia.

Plaintiff complains that he evacuates blood from his bowels following slight exertion, as a result of his injury. Defendant's local physician and the physician in New Orleans questioned· on that subject, gave as their opinion, that it was not connected with the hernia. They did not deny that an occurrence of the kind takes place, as claimed by the plaintiff, but they could not account for it.

At the time of the trial plaintiff was examined by another local doctor under the order of the court. This physician not only reported the hernia, but that plaintiff had a sensitive area over the colon, and was suffering with traumatic neurosis. He testified that traumatic neurosis may be produced by violence. As for the evacuation of blood, he does not say that it does not occur as claimed by plaintiff, but says he cannot account for it.

He gave it as his opinion that plaintiff's mind was centered a great deal on the evacuation of blood, that it was watched for and made him melancholy. His prognosis of plaintiff's condition, was, that he suffered mental distress due to his inability to work. He did not know the cause of the hemorrhage of which plaintiff complained, but agreed that plaintiff had some injury to his left side in addition to the hernia. He looked on the hernia, from the history of the case, as having been caused by violence. He states that it can be cured by an operation, but that plaintiff's mental condition may not be cured by it. He considered plaintiff's condition as liable to last for a long time, and that he was in no condition to perform manual labor.

The testimony of the plaintiff and of this physician as to his inability to labor is not disputed and may be regarded as established.

The local physician in the employ of defendant testified that when plaintiff first came to him, it was to treat his eye, and that plaintiff told him that about three days previous he was hurt in the side; that he made a record of these cases, etc. The report brought up in the record purports to have been made on September 29, 1927, and mentions an injury to his eye, and also strain of abdominal muscles by lifting. It says that the injury to the eye and to the abdominal muscles were both sustained September 29, 1927, at 2 o'clock p. m. The record contains a statement made by a young lady in the employ of defendant in New Orleans, in which she reports plaintiff as having said to her: "On September 26th, 1927, I was laying a pipe line and stepped on a piece of angle iron or reinforcement steel and tripped with a load on my shoulder. This caused a terrible strain inside, but nothing struck me. I ached for a short time, but continued to work until September 29th and had to see Dr. Griffith." Dr. Griffith is the local physician in the employ of the defendant. We are satisfied from plaintiff's evidence that the injury to his eye and that to his side and abdomen were all received at the same time and in the same fall. That is what Dr. Griffith reported to defendant, and the fact is supported by defendant's foreman, Mr. Hartman.

And the fact of the injury and complaint on account of injury to the side and abdomen to a physician within forty-eight hours being established in the way stated, we think the requirements of the law on the subject of hernia have been satisfied. But the evidence shows that plaintiff is entitled to compensation as a permanent total disability to do work of any reasonable character under Act 20 of 1914, Section 8, paragraph (b), amended Act 85 of 1926. The evidence shows that plaintiff's condition is the direct result of his injury, received as above stated. The indication is that it will endure for a long time, and the evidence does not indicate when it will be otherwise than as existed at the time of the trial. The evidence justifies the inference that manual labor is the only kind which plaintiff is capable of performing. Plaintiff was awarded compensation at the rate of $12.40 per week for a period of four hundred weeks, to be counted from September 29, 1927.

If it should turn out that his disability is not total and that it does not endure for the period stated, the statute on the subject provides a remedy.

Judgment affirmed. Defendant and appellant to pay the cost in both courts.