SCHNEYDER *v.* CADILLAC MOTOR CAR CO.

1. Workmen's Compensation—Res Judicata—Compensable Injury.

Denial of petition for compensation because disability, if any, was due to other causes *held,* not *res judicata* that employee had not sustained a compensable injury but only that the accident had not produced a compensable disability at the time of the hearing.

2. Same—Direct Injury to Nervous System.

All results, both physical and mental, of an accident which has a direct effect upon the nervous system, go to make up disability and determine compensability.

3. Same—Mental Disturbance Due to Collateral Causes.

Mental disturbance which is collateral to injury and does not arise directly from it but is due to worry, anxiety or brooding over the accident or its effect or compensation for it, or the like, is not compensable.

4. Same—Mental Disturbance—Proximate Cause of Disability.

On appeal from denial of compensation by department of labor and industry, filed on behalf of employee now committed to hospital for criminally insane, case is remanded to department for adjudication of issue, not heretofore adjudicated there, as to whether, and how far, plaintiff's present disability is the direct result of physical injury to foot, excluding consequences of mental disturbances collateral to, and not arising directly from, the physical hurt.

Bushnell, J., dissenting.

Appeal from Department of Labor and Industry. Submitted October 13, 1936. (Docket No. 73, Calendar No. 39,076.) Decided May 21, 1937.

Nick Schneyder presented his claim for compensation against Cadillac Motor Car Company, a division of General Motors Corporation, for injuries sustained while in defendant's employ. On petition of Joseph A. Storms, guardian of Nick Schneyder, for further compensation. Award to plaintiff. Defendant appeals. Award vacated and remanded.

*Dann & Atlas,* for plaintiff.

*J. G. Stevenson* and *E. C. McDonald,* for defendant.

Fead, C. J. August 3, 1928, Nick Schneyder, while an employee of defendant, was injured in the right foot by a car running over it and pinching it. The attending physician was unable to find any fracture or condition which would prevent him from returning to work. Nevertheless, he did not go back to work. He developed a bad mental condition in which notions of injustice and persecution in connection with his claim for compensation predominated. In 1934 he killed a man whom he thought was trying to steal papers relating to his claim and he is now confined in the Ionia State Hospital as a criminally insane person. His right leg has become weakened from disuse, partly at least arising out of his idea that he cannot use it.

In 1928 he made claim for compensation for "fracture to right foot." After hearing, the deputy commissioner denied the claim, adjudging that Schneyder had suffered an accident which arose out of and in the course of his employment but that—"plaintiff's disability if he has any is not the cause of an accidental injury, but is due to other causes."

On appeal, the award was affirmed. In its opinion the department found "If plaintiff has any disability, at the present time, he has not met the burden of proof in showing that it is due to the original injury."

The award was not *res judicata* that Schneyder had not sustained a compensable injury. It was *res judicata* only to the effect that he had suffered an accident but it had not produced a compensable disability at the time of the hearing. There was nothing in it which would prevent the later allowance of compensation if and when the original injury should develop into an actual disability. That Schneyder has become worse, both physically and mentally, since the hearing is undisputed.

The case presents the question whether and when disability arising from a mental disorder growing out of an accident is compensable.

In 86 A. L. R. 961, note, the cases are collected. It is said there does not seem to be any general rule governing such conditions but "generally no award will be made where the chain of causation is broken." However, the authorities plainly indicate the logical distinction:

(1) Where the accident has a direct effect upon the nervous system, all the results thereof, both physical and mental, go to make up disability and determine compensability;

(2) But where the mental disturbance is collateral to the injury, does not arise directly from it but is due to worry, anxiety or brooding over the accident or its effect or compensation for it, or the like, it is not compensable.

In the instant case the distinction was not kept in mind in the presentation of testimony nor in the opinion of the department. The department found

the fact of total disability without a proper regard for the applicable rule of law. The issue is whether and how far plaintiff's present disability is the direct result of the physical injury to his foot, excluding the consequences of mental disturbances collateral to and not arising directly from the physical hurt. In view of the fact that the issue has not been adjudicated by the department, the award is vacated and the cause remanded to the department for reconsideration in conformity with this opinion.

NORTH, BUTZEL, POTTER, and CHANDLER, JJ., concurred with FEAD, C. J.

WIEST, J. (*concurring*). The award of compensation, in part at least, rests upon subsequent insanity of plaintiff and should be vacated and the case remanded to the department with direction to limit consideration to plaintiff's physical disability caused by the injury to his foot, and previous adjudications with reference thereto.

It is manifest that plaintiff brooded over inability to obtain compensation until he is insane. Of course, under such circumstances, there is a relationship between the physical injury and the mania but not in the sense of compensable causation.

As stated in my Brother's opinion [*post*] we have affirmed awards for neurasthenia directly occasioned by physical injuries or severe shock, but the distinction between such cases and the instance at bar should be obvious. The instant case goes into another field and, if affirmed, sanctions compensation for subsequent mental derangement resulting from disappointment and brooding over an imagined wrong.

In this field my views are well expressed in *Kowalski* v. *Railroad Co.,* 116 Conn. 229 (164 Atl. 653, 86 A. L. R. 957), and I quote the following therefrom:

"We must also decline to recognize that the compensable consequences of an injury, although far-reaching so long as the chain of causation remains unbroken, may be extended so as to include unhappy mental or nervous states which do not pertain to the original injury except in the sense that they arise from the pendency of proceedings for compensation for the injury or anxiety because compensation may be terminated. The distinction between such a situation and a functional nervous upset and neurotic condition having causal relation with the personal injury, as in *Hunnewell's Case,* 220 Mass. 351 (107 N. E. 934), is obvious. Authorities in point either directly or by admissible analogy are few. In *Holt* v. *Yates and Thom,* 3 B. W. C. C. 75, it was held that incapacity from work due to a mental condition not resulting from the original injury but from brooding over the effects of the accident are not compensable. This is in harmony with the principle in the law of torts that the liability for fright, shock or other similar and immediate emotional disturbances caused by negligence does not extend to the effects of subsequent brooding over the negligent conduct or the danger to which it had exposed the person affected. American Law Institute, Tentative Restatement Torts, Draft No. 8, § 311, pp. 45, 47. In *Withers* v. *London, Brighton & S. C. Ry. Co.,* 9 B. W. C. C. 616, it was found that the original injury, to a hand, was not the physiological cause of insanity which led to the workman's suicide and it was held that, therefore, the death did not result from the injury. Cozens-Hardy, M. R., observes (p. 625), that to hold that wherever an accident involves depression of spirits the neurasthenia and its results are attributable to

the accident would 'be opening a door which we ought not to open. * * * There must be some direct evidence of the insanity being a result of the accident; something more than a subsequent occurrence.' To much the same effect Warrington, L. J., says (p. 629), that 'in order that the insanity may be treated as a result of the injury, you must find that (insanity) as a physiological result, not as an indirect result from the man's brooding over the fact of the injury, or from the depression occasioned in the case of a busy man restrained by the effects of the injury from going to work.' See, also, *Marshall* v. *Clayton & Shuttleworth, Ltd.*, 12 B. W. C. C. 47. A mental state or nervous disturbance caused merely by the pendency of compensation proceedings is even less necessarily referable to the injury. *Coffey* v. *Coffey Laundries, Inc.*, 108 Conn. 493 (143 Atl. 880)."

SHARPE, J., concurred with WIEST, J.

BUSHNELL, J. (*dissenting*). Nick Schneyder was in defendant's employ as a repair man. On August 3, 1928, while lying down at work under a car, with his feet extending out between the front and rear wheels, another car next to the one on which he was working, was moved forward so that it either ran over plaintiff's right leg, or, as is shown in defendant's *noncompensable* accident report, pinched his right foot, thereby causing a contusion. The leg, which showed neither cuts nor abrasions, was treated at the employer's first aid station and Schneyder returned to his job. He was unable to continue his day's work and attempted to take a street car to his home but he said that the pain was so intense, he was forced to take a taxicab. He never returned to work, although he did go back to the plant on August 11th and 20th for treatment by Dr. Going.

A claim for "compensation and payment of doctor and hospital bills" based upon "fracture to right foot" was filed on November 2d and, after several adjournments, the matter was heard by deputy commissioner Gibbons of the department of labor and industry on January 14, 1929.

On February 28, 1929, the deputy said:

"The plaintiff's disability if he has any, is not the cause of an accidental injury, but is due to other causes, further this case was continued from January 14, 1929, to February 28, 1929, for the purpose of giving plaintiff an opportunity to bring in medical proof to substantiate his claim. This he has failed to do.

"In view of the above facts compensation should be and same is hereby denied."

An application for review was filed later by a Chicago attorney. The opinion of the department on review indicates that no request was ever received for a date to take additional testimony and that the Chicago attorney, who asked for the appeal, did not appear, but that plaintiff did appear in person and denied the authority of this attorney. The opinion of the department affirmed the conclusions of the deputy and stated that "instead of furnishing the medical testimony, plaintiff had spent his time criticizing the manner and method of the deputy commissioner in hearing his case."

No application was made for leave to appeal from the order denying compensation.

Five years later a petition for further compensation was filed by the guardian of the injured employee, setting out "that plaintiff suffered severe injuries while in the employ of defendant, which resulted in plaintiff suffering from severe injuries to both feet and legs, internal injuries, traumatic

neurosis, neurasthenia and psycho-neurosis and insanity;" an extensive record was made before deputy commissioner Palliaer, on June 20, 1935. An award of $18 a week from April 1, 1931, and until further order, was affirmed by the department on review.

Appellant employer makes certain admissions but denies any causal connection between the accident and the claimed resultant injury. Defendant argues that the award entered April 20, 1929, denying compensation is *res judicata* of the pending claim and that the department does not have jurisdiction to reopen the case.

Appellee says that the employer did not make a true and complete report of the accident, that plaintiff's mental condition was not an issue at the 1929 hearing, and that denial of compensation, because of a lack of proof of disability in a foot at that time, is not a bar to an award at a later date when the foot has become worse and a mental condition has developed which defendant's witnesses concede is now totally disabling and which could have resulted from the accident.

Schneyder is now confined in the Ionia State Hospital as a criminally insane person, having killed a man in 1934 whom he supposed was trying to steal some papers pertaining to his claim for compensation.

The testimony before deputy Palliaer discloses that the physical and mental condition of Schneyder became progressively worse as time went on and that he is now totally disabled.

Medical testimony regarding plaintiff's ward's condition was given by Drs. Perry C. Robertson, Ira M. Altshuler, Henry A. Reye, and J. Clark Maloney.

The record indicates that those who have expert knowledge in this field disagreed among themselves as to the actual situation.

Appellant cites two grounds upon which it bases its claim that the award of compensation was erroneous: (1) That the department erred in holding that plaintiff's present petition for further compensation was not *res judicata* by virtue of the award entered February 28, 1929, and affirmed by the department on April 20, 1929; (2) That the department erred in holding that it had jurisdiction to rehear this case under the provisions of 2 Comp. Laws 1929, § 8453.

The acknowledged purpose in passing compensation acts was to provide relief to a workman injured by accident in the course of employment; it was intended that the burden of compensating for the injury was to be imposed upon the cost of production. See *Andrejwski* v. *Wolverine Coal Co.*, 182 Mich. 298 (Ann. Cas. 1916D, 724, 6 N. C. C. A. 807), and *Mackin* v. *Detroit-Timkin Axle Co.*, 187 Mich. 8. To accomplish these ends, compensation acts are uniform in offering to the injured party a simple method for recovery (*City of Grand Rapids* v. *Crocker*, 219 Mich. 178, 185), and in removing certain legal defenses (*Adams* v. *Acme White Lead & Color Works*, 182 Mich. 157, L. R. A. 1916A, 283, Ann. Cas. 1916D, 689, 6 N. C. C. A. 482).

"The intent (referring to the compensation act) was to provide a fair remuneration to the employee for an accidental injury sustained by him while so employed, to simplify as far as possible the manner of determining the liability of the employer to pay compensation." *City of Grand Rapids* v. *Crocker, supra.*

On the question of *res judicata, Skinner* v. *Argentine Township Board,* 238 Mich. 533, 537, states:

"The doctrine of *res judicata* is defined to be: 'That existing final judgment or decree rendered upon the merits, and without fraud or collusion, by a court of competent jurisdiction, upon a matter within its jurisdiction, is conclusive of the rights of the parties or their privies, in all other actions or suits in the same or any other judicial tribunal of concurrent jurisdiction, on the points and matters in issue in the first suit.' 15 R. C. L. p. 950, § 429."

See, also, 34 C. J. pp. 743, 744 and 15 R. C. L. p. 949, *et seq.*

The workmen's compensation act provides in part that:

"Any weekly payment under this act may be reviewed by the industrial accident board * or by any member or deputy member thereof, at the request of the employer, or insurance company carrying such risk, or the commissioner of insurance, as the case may be, or the employee, and on such review it may be ended, diminished or increased, subject to the maximum and minimum amounts above provided, if the board * or member or deputy member finds that the facts warrant such action." 2 Comp. Laws 1929, § 8453.

The legislature, by enacting this section, indicated that compensation proceedings were intended to be endowed with an elasticity not known to ordinary legal and equitable actions. Because it permits the reopening of cases, it is apparent that the doctrine of *res judicata* does not bar the right of a plaintiff proceeding under the act, to petition for

---

* The powers and duties of the industrial accident board have been transferred to the department of labor and industry and the board abolished. See 2 Comp. Laws 1929, § 8312.—Reporter.

further compensation in event of a change in his physical condition even though there has been a prior hearing on his claim.

The position of the appellant is that unless there has been an award of compensation, no right exists to reopen a case under the above section, despite any change in condition; and that, since no award of compensation was ever made in this case, the entire matter is forever closed. By following this argument to its logical conclusion, it can be seen that the result is not in harmony with the intent and spirit of the act.

Under appellant's view, no matter how small the original award might have been, the door remains open, under 2 Comp. Laws 1929, § 8453, to consider any subsequent change in physical condition of a plaintiff, even though it might result in a new award based upon a physical condition unknown at a previous hearing but resulting from the original accident. We have upheld awards for further compensation in such instances. See *Blackman* v. *Buck Construction Co.*, 255 Mich. 237. In that case, plaintiff suffered an injury to his knee in January, 1929. An award of $36 was made; a settlement receipt was filed, though not approved, and the plaintiff returned to work. In October, 1929, a petition for further compensation was denied and no appeal taken. In October, 1930, plaintiff filed a petition for further compensation alleging that because of the injury and of further complications which set in after a long time, petitioner's leg had been amputated. The department reopened the case and granted compensation. We said:

"Plaintiff's last petition sufficiently alleged a change in condition due to the accident and conferred jurisdiction upon the commission to act.

There was testimony the injury from which plaintiff suffered and his subsequent condition were the probable result of such injury. We cannot say upon the record there was no testimony to support the award of the department of labor and industry, which is affirmed, with costs.''

Applying appellant's argument, if there had been no compensation granted for the knee injury, the opportunity for gaining compensation for the leg amputation would be gone. The result of the argument is illogical. Section 8453 should be construed so as to carry out the full intent of the compensation act in its entirety.

We do not believe this section was intended to preclude an award of compensation upon a proper showing of change in physical condition merely because no award was made at the original hearing.

It is a familiar rule of statutory construction that the meaning of general words may be restrained, narrow words expanded, and when the intention can be collected from the statute, words may be modified, altered or supplied so as to obviate any repugnancy or inconsistency with such intention. This rule, as given in Endlich on the Interpretation of Statutes (1st Ed.), § 295, and 2 Lewis' Sutherland, Statutory Construction (2d Ed.), §§ 347, 348, was quoted and applied in *City of Grand Rapids* v. *Crocker,* 219 Mich. 178, 183, 184.

It must be stated, however, that only the employee's physical condition and its effect upon the earning capacity of the plaintiff may be investigated, the events leading up to the accident being controlled by the first hearing. *Beckwith* v. *Spooner,* 183 Mich. 323 (Ann. Cas. 1916E, 886), and *Dyer* v. *McQuistion,* 273 Mich. 327.

In the instant case, at the first hearing commissioner Gibbons found that ''Nick Schneyder suf-

fered an accident which arose out of and in the course of his employment," but said, "The plaintiff's disability if he has any is not the cause of an accidental injury, but is due to other causes." The only injury claimed was a fracture of the right foot. The question of plaintiff's mental derangement was not put in issue at that time, hence there could be no adjudication on that matter.

Plaintiff could not have been negligent in failing to make a claim for his mental condition in the first petition; he did not know of it and the only medical evidence indicating the presence of such disability remained in the files of the defendant company until the second hearing. If there be blame for failure to litigate this matter promptly, it must fall upon defendant.

Appellants cite several cases in support of their position which may be distinguished.

*Roe* v. *Daily Record,* 273 Mich. 5, is not applicable because the only question was the power of the department to correct a mistake in a statement of weekly salary, there being no change in physical condition.

*DeBernardi* v. *Oliver Iron Mining Co.,* 271 Mich. 212, is distinguishable from the instant case, by reason of the department's finding of total disability on the intensification of the *same* causes of complaint upon which a previous finding of no disability had been based. In the instant case, the question of the mental condition was not before the department in the first instance.

Appellant relies strongly upon *Luteran* v. *Ford Motor Co.,* 274 Mich. 687, but it is distinguishable because of the fact that the same issues were before the department at both hearings. We said:

"The doctors agree that plaintiff's present condition is a progressive development of the condition

of 1929. Because the award of 1929 denied compensation on the finding that the condition of the eye was not caused by the accident, it follows that the progressive development of such condition cannot be attributed to the accident. The present award, therefore is the result of reversal of the former finding of fact upon a rehearing—procedure which is beyond power of the department. The first award was *res judicata* of liability for the condition of the eye. *DeBernardi* v. *Oliver Iron Mining Co.*, 271 Mich. 212."

In the instant case, the department in its opinion on plaintiff's petition for further compensation filed July 2, 1934, found that plaintiff's neurotic condition totally disabled him and that this disability is due directly to his accidental injury of August 3, 1928.

Is the plaintiff's mental disability a compensable injury within the purview of the workmen's compensation act, and if so, is there any competent evidence to sustain the finding of the department?

We quote from the text of 86 A. L. R. 961:

"As in most other cases involving the determination of the right to compensation, the question whether a mental state or nervous condition following an injury is compensable depends upon the facts of each case, and it is difficult to lay down any general rule governing such cases, further than to state that generally no award will be made where the chain of causation is broken."

Authorities on this question are divided into two classes. The first includes cases where the mental disturbance or nervous condition is a direct result, springing from the accident itself.

The following cases have held that mental disturbances or nervous conditions directly resulting

from accidents are compensable: *Kingan & Co., Ltd.,* v. *Ossam* (1918), 75 Ind. App. 548 (121 N. E. 289); *Harrisburg Coal Mining Co.* v. *Industrial Commission* (1925), 315 Ill. 377 (146 N. E. 543); *Crow* v. *Raymond Concrete Pile Co.* (1929), 11 La. App. 549 (123 South. 413); *Stanley McIsaac's Case* (1929), 266 Mass. 67 (164 N. E. 653); *Welchlin* v. *Fairmont Railway Motors* (1930), 180 Minn. 411 (230 N. W. 897); *Carter Oil Co.* v. *Gibson* (1925), 34 Wyo. 53 (241 Pac. 219); and *Charles H. Hunnewell's Case* (1915), 220 Mass. 351 (107 N. E. 934).

In *Sjoholm* v. *Hercules Powder Co.*, 227 Mich. 610, this court upheld an award of compensation where a workman, 61 years of age, in previous good health, was found, about an hour and half after an explosion of dynamite and nitroglycerine in the plant where he was employed, to be suffering from shock and later suffered from shattered nerves and other ailments, his death following about 16 months later. The testimony of physicians was that death was caused by the shock resulting from said explosion.

In the case of *Klein* v. *Len H. Darling Co.*, 217 Mich. 485, where an employee, while in a weak and nervous condition, received a mental and nervous shock as the result of an accident to a fellow employee at his hands, his death in less than three weeks as the result of said shock was held to have been accidental within the meaning of the workmen's compensation act, although he suffered no external physical injury. The words of Justice WIEST in his concurring opinion (p. 495) are of interest:

"At first I was inclined to disagree with Mr. Justice MOORE, but upon reflection I am convinced he is right. An accident happened in which the deceased was an actor, and the shock to him was so

acute, and so depressed his vital forces as to kill him. We must not overlook man's nervous system and mental makeup and their intimate relation to his vital forces.

"This man died because his vital forces could not meet and withstand the acute depression occasioned by what he had done in the course of his employment. The injury to him was no less real, and fatal in its consequences, than a mortal wound. 'Accidents,' within the comprehension of the workmen's compensation law, include all accidents actionable at law and all former non-actionable accidents, except in case of intentional and wilful misconduct on the part of the employee.''

These cases indicate that under the law of Michigan, the mental and nervous structure of man should be considered in determining whether a compensable injury has occurred.

The second class is composed of those cases wherein the disability has arisen from anxiety, worry or brooding over the proceedings for compensation, or has arisen from a cause unrelated to the accident itself.

In the following cases of such types, compensation was denied: *Kowalski* v. *Railroad Co.*, 116 Conn. 229 (164 Atl. 653, 86 A. L. R. 957); *Holt* v. *Yates and Thom* (1909), 3 B. W. C. C. 75 (Eng.); *California Notion & Toy Co.* v. *Industrial Accident Commission* (1922), 59 Cal. App. 225 (210 Pac. 524); *Plodzyk* v. *Connecticut Coke Co.* (1933), 116 Conn. 297 (164 Atl. 636).

The opinion of the department affirming the award of compensation states that plaintiff's mental condition was the direct result of the accident suffered by him August 3, 1928, at defendant's plant. Under our decisions, this court may not disturb a finding

of fact of the department of labor and industry as being contrary to the great weight of evidence, where it is supported by competent testimony, even though there is impressive testimony to the contrary. See *Hayes* v. *Boutell,* 253 Mich. 628, and *Sickels* v. *Packard Motor Car Co.,* 264 Mich. 601.

In the instant case, all the medical experts agree that the accident may have precipitated or accentuated the mental state of plaintiff. The testimony of two witnesses tends to confirm the theory of direct relationship between the accident and the injury. Dr. Altshuler said:

"The accident has a direct relationship with the precipitating of his present mental condition. I emphasize the word precipitating, as the content of his delusional revelations centers around his nucleus of the accident with whatever subsequent complications the accident has brought about."

Dr. Robertson was asked:

"Is his present condition, in your opinion, traceable to this accident?"

He answered:

"I said it was stimulated and enhanced. I didn't know the man prior to his accident. I met the man in 1934."

The award, being supported by competent testimony, should be affirmed, with costs to appellee.