### REDFERN v. SPARKS-WITHINGTON CO.

1. Workmen's Compensation—Neurosis—Proximate Cause.
    Neurosis resulting in disability or death is compensable under the workmen's compensation act, where produced by an occupationally-incurred injury to the body and/or shock to the nervous system.

2. Same—Pre-Existing Disease—Aggravation.
    Pre-existing disease does not bar recovery of workmen's compensation when subsequent occupational injury aggravates the condition to the point of disability or precipitates the disability.

---

References for Points in Headnotes
[1]  58 Am Jur, Workmen's Compensation § 244.
[2]  58 Am Jur, Workmen's Compensation § 247.
    Workmen's compensation; injury or death to which pre-existing physical condition of employee causes or contributes. 19 ALR 95, 28 ALR 204, 60 ALR 1299.
[3]  58 Am Jur, Workmen's Compensation § 461.
[4]  58 Am Jur, Workmen's Compensation § 530.
[7]  58 Am Jur, Workmen's Compensation § 250.

3. SAME—NEUROSIS—PROXIMATE CAUSE—QUESTION FOR TRIER OF FACTS.

Whether or not an injured employee's neurosis was directly or only collaterally caused by the occupational injury sustained, is a question of fact to be determined by the workmen's compensation appeal board.

4. SAME—FINDINGS OF FACT—EVIDENCE—SUPREME COURT—WORKMEN'S COMPENSATION APPEAL BOARD.

It is not the function of the Supreme Court to act as the trier of the facts in a proceeding to recover workmen's compensation as the findings of fact of the workmen's compensation appeal board are binding upon the Supreme Court, where there is any competent evidence to support them (CL 1948, § 413.12).

5. SAME—PROXIMATE CAUSE—EVIDENCE—CONVERSION HYSTERIA.

Finding of fact by workmen's compensation appeal board that plaintiff's "conversion hysteria" was directly traceable to injury she received when 15- to 20-pound steel weight struck her between the shoulder blades while she was seated at her punch press and bending forward at work *held,* supported by evidence (CL 1948. § 413.12).

6. SAME—CONVERSION HYSTERIA—CONTINUING DISABILITY.

Entry of a continuing award notwithstanding lapse of 12 months between date of the order of the workmen's compensation appeal board and the date medical testimony was taken by deposition *held,* proper, where evidence as to plaintiff's disability from "conversion hysteria," as evinced from the nature of the illness and the repeated unsuccessful attempts to alleviate it, would justify the appeal board in concluding the disability was a continuing one.

7. SAME—CONVERSION HYSTERIA—INJURY TO NERVES—EVIDENCE—DISCRETION OF WORKMEN'S COMPENSATION APPEAL BOARD.

Original application for hearing and adjustment of claim for workmen's compensation for "injury to * * * nerves" was sufficiently broad to embrace "conversion hysteria" as to which testimony was introduced for the first time on appeal to the workmen's compensation appeal board and the admission of such testimony at that time was within the statutory discretion of the board (CL 1948, § 413.11).

8. SAME—WORKMEN'S COMPENSATION APPEAL BOARD—DECISION OF CASES—BRIEFS.

Decision of the workmen's compensation appeal board of a case in which neither party had filed a brief within the time

allowed *held*, within the discretion of the board, the Supreme Court not favoring delay in the disposition of workmen's compensation cases by any party.

Dethmers, C. J., and Carr and Kelly, JJ., dissenting.

Appeal from Workmen's Compensation Appeal Board. Submitted April 17, 1958. (Docket No. 2, Calendar No. 47,302.) Decided July 15, 1958.

Anna R. Redfern presented her claim against Sparks-Withington Co., employer, and American Motorists Insurance Co., insurer, for compensation because of nervous condition which developed following industrial accident. Award to plaintiff. Defendants appeal. Affirmed.

*L. R. Heuman* (*Alvin G. Dahlem*, of counsel), for plaintiff.

*George H. Hill*, for defendants.

Kelly, J. *(dissenting)*. Defendants appeal from an order of the workmen's compensation appeal board reversing the hearing referee and granting plaintiff "$28 per week from April 29, 1953, and until the further order of the department."

Appellants contend that the accident did not cause a direct injury to plaintiff's nervous system; that plaintiff's mental or emotional disturbance was collateral to the injury; that the appeal board could not make a continuing award where plaintiff had not testified as to her condition for 21 months previous to such award; that the appeal board erred in granting plaintiff leave to take additional testimony after an award had been entered by a hearing referee.

Plaintiff, a punch-press operator, suffered an injury on January 23, 1953, when a 15-pound weight, or counterbalance, fell off the punch press and struck plaintiff between her shoulder blades.

Plaintiff filed her application for hearing and adjustment of claim in June, 1953, claiming a shoulder injury. The hearing on said application was commenced in Jackson, Michigan, on February 16, 1955, and the deputy commissioner called attention to the continuances, and stated that "testimony of the plaintiff was filed and agreement to redeem liability was filed; commission's order entered denying the petition."

When the hearing commenced, plaintiff being duly sworn, her attorney asked permission to make the following statement on the record:

"Prior to my entry in this matter Mrs. Redfern was attended medically as the result of this injury, she had Doctor Ferversky, and I am also associated with counsel representing her. That after we were in the case and representing her Doctor Ferversky was instrumental in sending her to Mayo Brothers in Rochester, Minnesota; that prior to that she had been examined in the University of Michigan Hospital, and I was instrumental in getting her into a clinic in Detroit, and after that she went down to the Ford Hospital and there she was seen by Doctor Hart and Doctor Murphy, as well as by other doctors. This I know about, and as the consequence we have not been able to obtain any medical associating any disability due to this injury and I have endeavored to the best of my ability under the compensation law to explain the situation to my client, that she must have medical testimony and that we could not obtain it, so we entered into settlement. I am merely making that statement as a matter of protection of myself, and on the other hand I am willing to proceed with the case, with the testimony she has to the best of my ability."

February 24, 1955, the deputy commissioner determined that the plaintiff received an injury arising out of her employment on January 23, 1953, and was

entitled to total disability compensation from January 24, 1953, to February 17, 1953, and partial disability compensation from March 19, 1953, to April 29, 1953, and in his finding the referee stated:

"The plaintiff's disability, if any, subsequent to April 29, 1953, is not related to the personal injury of January 23, 1953."

March, 1955, plaintiff filed an application for review and in June, 1955, requested permission to take additional testimony, raising for the first time the question of hysterical conversion. Plaintiff's request was granted by the appeal board.

Depositions of Doctors Karr, Corley and Murphy were taken on November 9, 1955, and filed with the board on December 14, 1955. No other testimony was taken or introduced.

The opinion of the board granting plaintiff compensation from April 29, 1953, until further order, and reversing the award of the referee, contained the following paragraphs, which set forth the board's reasons for arriving at its conclusion:

"The plaintiff has been totally disabled since April 29, 1953. Of that there is no question. Apparently there is no organic explanation for her complaints. Nothing happened to her that should have caused more than a few weeks of disability. However because of her particular personality she developed a conversion hysteria precipitated by her injury which accounts for her disability. The disability is real and there is no question of malingering involved. The only question is whether or not this kind of disability is compensable. * * *

"Applying the standard of the *Schneyder Case* (*Schneyder* v. *Cadillac Motor Car Co.*, 280 Mich 127) we believe that a direct relationship is established where the pattern of disability can be directly traced to the injury without any break in the chain of causa-

tion. We believe the relationship is indirect when the precipitating factor is a subsequent collateral consideration or event.

"There is no break in the chain of causation in this case. The plaintiff's disability and hysteria is directly traceable to her injury as the precipitating factor. She, therefore, is entitled to compensation at the rate of $28 per week from April 29, 1953, and until the further order of the department. A continuing award is being made because the evidence clearly indicates that her disability was likely to continue. The award of Referee Huber is reversed in accordance with this opinion."

Appellants in their brief answer the appeal board as follows:

"The appeal board was limited to such medical testimony as appeared in the record. Since all medical witnesses testified that plaintiff's mental or emotional disturbance was not the direct result of the injury the case at bar rests squarely on the *Schneyder Case* and is not compensable."

In its opinion, the appeal board quoted from the *Schneyder Case,* 280 Mich 127, 129, as follows:

"In 86 ALR 961, note, the cases are collected. It is said there does not seem to be any general rule governing such conditions but 'generally no award will be made where the chain of causation is broken.' However, the authorities plainly indicate the logical distinction:

"(1) Where the accident has a direct effect upon the nervous system, all the results thereof, both physical and mental, go to make up disability and determine compensability;

"(2) But where the mental disturbance is collateral to the injury, does not arise directly from it but is due to worry, anxiety or brooding over the accident or its effect or compensation for it, or the like, it is not compensable."

Dr. Jean P. Karr, a witness for plaintiff, graduated from the University of Illinois in 1947, and has practiced in Jackson, Michigan, since April, 1953. He testified that internal medicine is his specialty, with neurology as another field of interest.

Dr. Karr testified that he was of the opinion plaintiff was under great emotional strain and fatigue before the accident and that her condition was one of long standing which had progressively become worse; that he examined plaintiff in 1954, approximately 18 months after the injury, and he did not find any structural damage to the nervous system; that the mental disturbance did not arise directly from the injury; that plaintiff's inability to work is 80% psychological and 20% vague physical complaints, and "fatigue perhaps is the physical reason for her not working." The following questions were asked by plaintiff's attorney and answered by Dr. Karr:

"*Q*. In other words, Doctor, you feel that this condition that now disables Mrs. Redfern is a condition of long standing, which has progressively become worse, is that right?

"*A*. Yes, if I understand your question correctly.

"*Q*. And in a sense the injury she received in January, 1953, at the Sparks-Withington plant could have aggravated that situation?

"*A*. In all honesty I must answer yes to that. * * *

"*Q*. Doctor, in response to a question by counsel, you answered that her mental disturbance was independent of the injury. However, the mental disturbance that she had could have been, her condition could have been aggravated by the injury, is that right?

"*A*. I wonder—this is a medical reflection—I wonder if the term aggravate is as appropriate as precipitated.

"*Q.* Well, the mental disturbance could have been precipitated then?

"*A.* Brought out into the open, that is what I would say.

"*Q.* Where it was hidden before, and the injury brought it out to where it is noticeable to everybody, even a layman?

"*A.* Yes, that is correct, as I see it.   *   *   *

"*Q.* I presume in the realm of neurological and psychiatry that frequently people that do have a mental condition, mental disturbance, to the average person it is not apparent until some intervening trauma might bring it out?

"*A.* That is often the case.

"*Q.* Do you feel that would have happened here when she had this accident at the factory?

"*A.* Yes, as a precipitating influence."

The following questions were asked Dr. Karr by the attorney for defendants:

"*Q.* Then to go back to our original question, in your opinion the woman's mental disturbance, is it not collateral to the injury?

"*A.* If I understand your use of the word collateral, the answer is yes.   *   *   *

"*Q.* Doctor, to go back to my original question, in your opinion this mental disturbance is collateral to the injury, it does not arise directly from it, but is due to worry, anxiety, brooding and other—

"*A.* Personality defects.

"*Q.* Personality defects?

"*A.* That is correct."

The deposition of Dr. Bernard M. Murphy, who has practiced in Jackson, Michigan, since 1935, and specializes in neurology, was taken by defendants. Counsel for appellants, in his brief, calls to our attention the following questions asked Dr. Murphy and the answers given:

"*Q.* Will you tell us what your findings were?

"*A.* Well, I did a physical and neurological examination and found nothing organically wrong. I felt from a psychiatric view she was suffering from anxiety, and I made a diagnosis of psychoneurosis, anxiety and hysteria. * * *

"*Q.* Then this condition, which I have used the word collateral, isn't it due to personality defects, and worry, anxiety, brooding, and all those things that are not directly caused by the accident?

"*A.* I believe that is true.

"*Q.* Doctor, in your opinion would a diagnosis of conversion hysteria be collateral, rather than direct?

"*A.* That's right, I don't believe the injury directly caused this emotional problem she has. * * *

"*Q.* Doctor, these reactions are they, in your opinion, the direct result of the injury, or are they collateral to the injury?

"*A.* They are collateral to the injury."

Counsel for appellee calls to our attention the following questions he asked Dr. Murphy and the doctor's answers:

"*Q.* You gathered from the history she gave you, and your examination physically and neurologically, it was your diagnosis that she had a mental disturbance, and apparently a mental disturbance for some time back in the past?

"*A.* I would use the term emotional disturbance.

"*Q.* Yes. A person having an emotional disturbance like she had, and the superimposing of an injury like she had at the factory, would that precipitate or bring the situation out in the open where it would be noticeable to almost everybody, could a small injury do that?

"*A.* I think almost any precipitating anxiety might."

Defendants also introduced the deposition of Dr. Cecil Corley, who specializes in internal medicine in

the city of Jackson, and who saw plaintiff on the day of the accident and 5 times thereafter, the last time being on February 18, 1953. In their brief, appellants call to this Court's attention the following questions asked by their counsel and Dr. Corley's answers thereto:

"*Q.* In your opinion was this woman's mental disturbance collateral to the injury?

"*A.* Yes.

"*Q.* In your opinion was this woman's mental disturbance due to worry, anxiety and brooding over the alleged accident?

"*A.* Well, I think it was at the time, on the basis of the long, prolonged stress and strain she had been through for a number of years. * * *

"*Q.* Doctor, just to make it clear in the record, in your opinion, did this woman's mental disturbance, is it collateral to the injury, rather than directly the result of the injury?

"*A.* Yes, sir.

"*Q.* And by collateral, you mean it is due to worry, anxiety or brooding?

"*A.* Yes. * * *

"*Q.* But it is your opinion the mental disturbance is collateral to the injury?

"*A.* Yes."

Appellee calls to our attention the further testimony of Dr. Corley:

"(Cross-examination) *Q.* But in your opinion could this accident have precipitated—or legally we use the word aggravated, that mental disturbance?

"*A.* Well, I think basically she has an unstable personality, which any upset she might have. If she had a divorce at that time, or anything happen at that time might have upset her, anything which might occur. * * *

"(Redirect examination) *Q.* Doctor, this injury and its relation to the mental disturbance, could it not be a mere coincidence?

"*A.* Well, it could be a mere coincidence, it could be, as has been brought out, another straw on the camel's back, it was a lack of any structural injury, followed by the extreme complaints which she had, by structural injury I mean more than a minor bruise, followed by the extreme complaints she had, which brands the thing as gross exaggeration of all symptoms, and I have no doubt there were other problems confronting her at that time, but I didn't go into them, or into the psychiatric aspect of it. I saw her 5 times, and considered the injury healed, and that was the end of it.

"*Q.* But it is your opinion the mental disturbance is collateral to the injury?

"*A.* Yes."

The 3 doctors, Karr, Corley and Murphy, testified that plaintiff's hysteria was collateral to rather than a direct result of the injury.

Dr. Karr answered in the affirmative a question that included the word "aggravate" but later changed "aggravate" to "precipitate." The doctor defined "precipitate" to mean: "Brought out into the open" so that the mental disturbance that existed in a hidden form before the accident would be apparent after the accident.

Plaintiff, defendant, and the appeal board agreed that *Schneyder* v. *Cadillac Motor Car Co.*, 280 Mich 127, is of controlling importance. In the *Schneyder Case* this Court remanded the matter to the appeal board for reconsideration, with the statement (p 130):

"The issue is whether and how far plaintiff's present disability is the direct result of the physical injury to his foot, excluding the consequences of mental disturbances collateral to and not arising directly from the physical hurt."

In the *Schneyder Case,* Justice Wiest wrote a concurring opinion in which he quoted from a Connecti-

cut case (*Kowalski* v. *New York, N. H. & H. R. Co.*, 116 Conn 229, 236 [164 A 653, 86 ALR 957]), as follows (pp 131, 132):

" 'To hold that wherever an accident involves depression of spirits the neurasthenia and its results are attributable to the accident would "be opening a door which we ought not to open.  *  *  *  There must be some direct evidence of the insanity being a result of the accident; something more than a subsequent occurrence." ' "

In *Thornton* v. *Luria-Dumes Co-Venture*, 347 Mich 160, we stated that the writ of certiorari to review proceedings to recover workmen's compensation brings to the Supreme Court questions of law only and does not permit the weighing of evidence to determine whether administrative findings of fact offend rules governing clear weight and preponderance of evidence as on appeals from circuit court, the Court being obligated to accept an administrative finding of fact that is supported by any evidence whatever to sustain it.   See, also, CL 1948, § 413.12 (Stat Ann 1950 Rev § 17.186).

Agreeing and using this principle of law, we have searched the record for any evidence to support the workmen's compensation appeal board's finding that plaintiff's disability is compensable because the "hysteria is directly traceable to her injury."   We find no such evidence.

The appeal board's order of November 14, 1956, should be vacated and set aside.   Because of this ruling appellants' remaining claimed errors need not be considered.

DETHMERS, C. J., and CARR, J., concurred with KELLY, J.

EDWARDS, J. Anna Redfern, plaintiff in this case, was employed by defendant Sparks-Withington Company for almost 9 years. On January 23, 1953, she was seated and bending forward working at her punch press when a 15- to 20-pound steel weight struck her between the shoulder blades, apparently having fallen from the top of the machine.

Since then, except for 1 month, she has not worked. She describes loss of feeling and strength in her right hand and arm, swelling and pain in the right shoulder and neck area, and general fatigue. Although doctors in 5 of this country's finest hospitals and clinics have provided no relief and found no organic cause, they have diagnosed her condition as what may be summed up in the term "conversion hysteria."

For a definition of this term, Blakiston's New Gould Medical Dictionary refers us to "conversion reaction" which they characterize as "a mental defense mechanism whereby unconscious emotional conflict is transformed into physical disability. * * * Conversion reactions may include anesthesia (anosmia, blindness, or deafness), paralysis (paresis, aphonia, monoplegia, or hemiplegia), or dyskinesis (tic, tremor, posturing, or catalepsy). Formerly classified as *conversion hysteria.*" Blakiston's New Gould Medical Dictionary (2d ed) (1956), pp 280 and 1012.

On June 22, 1953, after defendants had ceased voluntary compensation payments, plaintiff filed a claim for workmen's compensation claiming continuing disability as a result of the injury of January 23, 1953. Mrs. Redfern's claim for workmen's compensation was granted by the referee but only to the extent of 2 months' total and partial disability. Subsequent to this hearing (in which no medical testimony was introduced), on motion granted by the appeal board the parties took depositions from 3 doc-

tors.  Having the benefit of this testimony, the appeal board reversed, finding:

"The plaintiff has been totally disabled since April 29, 1953.  Of that there is no question.  Apparently there is no organic explanation for her complaints.  Nothing happened to her that should have caused more than a few weeks of disability.  However because of her particular personality she developed a conversion hysteria precipitated by her injury which accounts for her disability.  The disability is real and there is no question of malingering involved."

In this State, the rule is well established by a line of authority dating from 1922 that where occupationally-incurred injury to the body and/or shock to the nervous system produces a neurosis resulting in disability or death, it is compensable.  *Klein* v. *Len H. Darling Co.,* 217 Mich 485; *Cazan* v. *City of Detroit,* 279 Mich 86; *Laichalk* v. *Chicago Pneumatic Tool Co.,* 308 Mich 298; *Hayes* v. *Detroit Steel Casting Co.,* 328 Mich 609.

This record shows, however, without dispute, that claimant suffered from an emotional or personality disturbance which existed prior to the injury and was so severe in nature that without it the injury would not have resulted in the extended disability.  This Court has decided, however, that a pre-existing disease does not bar recovery of workmen's compensation when subsequent occupational injury aggravates the condition to the point of disability or precipitates the disability.  *Sheppard* v. *Michigan National Bank,* 348 Mich 577; *Coombe* v. *Penegor,* 348 Mich 635.

That this holding is in harmony with views in other jurisdictions is indicated by Professor Larson:

"Conversely, when there has been a physical accident or trauma, and claimant's disability is increased or prolonged by traumatic neurosis or hysterical

paralysis, it is now uniformly held that the full disability including the effects of the neurosis is compensable. Dozens of cases, involving almost every conceivable kind of neurotic or hysterical symptom, have accepted this rule." [Citing cases.] 1 Larson, Workmen's Compensation Law, § 42.22.

Appellants argue that the case of *Schneyder* v. *Cadillac Motor Car Co.,* 280 Mich 127, qualifies our rule by delineating 2 classes of cases: Those where neurosis is the direct result of the injury which are compensable; and those where it is collateral to the injury (as, for example, where neurosis follows brooding and worry over inability to regain employment, or over the outcome of compensation proceedings) which are not compensable. The case does, indeed, make this distinction.* Its continued validity we do not pass on now because it is not in question under the facts of this case. Cases subsequent to *Schneyder* reiterate that—as with other problems of causation—whether the case is one of direct or collateral relation of injury to neurosis is a question of fact to be determined by the appeal board. *Kubiak* v. *Briggs Manfg. Co.,* 286 Mich 329; *Karwacki* v. *General Motors Corporation,* 293 Mich 355; *Laichalk* v. *Chicago Pneumatic Tool Co., supra; Hayes* v. *Detroit Steel Casting Co., supra.*

Here, the appeal board found:

"There is no break in the chain of causation in this case. The plaintiff's disability and hysteria is directly traceable to her injury as the precipitating factor."

Testimony supporting such a finding was elicited from Drs. Karr and Murphy:

"*Q.* In other words, Doctor, you feel that this condition that now disables Mrs. Redfern is a condition

---

* See, however, Larson's comment, § 42.24, p 620.

of long standing, which has progressively become worse, is that right?

"*A.* Yes, if I understand your question correctly.

"*Q.* And in a sense the injury she received in January, 1953, at the Sparks-Withington plant could have aggravated that situation?

"*A.* In all honesty I must answer yes to that. * * *

"*Q.* * * * Her condition could have been aggravated by the injury, is that right?

"*A.* I wonder—this is a medical reflection—I wonder if the term aggravate is as appropriate as precipitated."

"*Q.* * * * A person having an emotional disturbance like she had, and the superimposing of an injury like she had at the factory, would that precipitate or bring the situation out in the open? * * *

"*A.* I think almost any precipitating anxiety might."

True enough, testimony is available which could support an opposite finding. It is not, however, the proper function of this Court to act as trier of the facts. On the contrary, findings of the appeal board are binding upon this Court where, as here, there is any competent evidence to support them. CL 1948, § 413.12 (Stat Ann 1950 Rev § 17.186) ; *Paton* v. *Port Huron Engine & Thresher Co.*, 214 Mich 130; *Weenink* v. *Allen Electric & Equipment Co.*, 276 Mich 561; *Thornton* v. *Luria-Dumes Co-Venture,* 347 Mich 160.

Appellants raise other questions. A period of 12 months intervened between the date of the order of the appeal board entering a continuing award and the date medical testimony was taken by deposition. Citing the holding in the first *White Case* (*White* v. *Michigan Consolidated Gas Co.*, 342 Mich 160), appellants contend there was no evidence to support the entry of a continuing award for that period. We believe there was sufficient testimony from which the

appeal board could have concluded that, due to the nature of the illness and the repeated unsuccessful attempts to alleviate it, the disability was a continuing one. This Court has disposed of the question of lack of authority to enter such an award in the second *White Case* (*White* v. *Michigan Consolidated Gas Co.,* 352 Mich 201).

Defendants further complain that plaintiff's original application for hearing and adjustment made no mention of disability from post-traumatic neurosis, that this question was introduced for the first time on plaintiff's motion before the appeal board to take additional testimony, and that she should not be allowed to "broaden" her claim at this stage of the proceedings. Plaintiff's original application did, however, claim "injury to  *  *  *  nerves." Appellants had notice of the injury and knowledge of claimant's condition. The neurosis was not new to them. See *Nagy* v. *National Can Co.,* 277 App Div 1083 (100 NYS2d 807).

The compensation law provides:

"If a claim for review is filed  *  *  *  the compensation commission shall promptly review the decision, together with such records as may have been kept of its hearing, and shall also, if desired, hear the parties, *together with such additional evidence as the compensation commission in its discretion may allow them to submit.*" (Emphasis supplied.) CL 1948, § 413.11 (Stat Ann 1950 Rev § 17.185).

That Mrs. Redfern has been disabled since her injury has always been clear. The additional testimony taken pertained to the cause of that disability. We do not view this as a new disability but hold that the taking of this additional testimony was well within the statutory discretion of the appeal board.

Finally, error is assigned because the appeal board, after the expiration of a period of time in

which neither side filed briefs (although transcripts were on file), proceeded to decide the case without notice to either side and without briefs. When plaintiff failed to file a brief within the time allowed, defendants had at least 2 courses of action open to them—to file their own brief, or to move to dismiss the appeal. Either course would have protected their interests. Failing such action, it must be held to be within the discretion of the appeal board to dispose of such matters on its own motion. This Court does not favor delay in the disposition of workmen's compensation proceedings on the part of any party.

The award is affirmed. Costs to appellee.

SMITH, BLACK, VOELKER, and KAVANAGH, JJ., concurred with EDWARDS, J.