### MEYERS *v.* MICHIGAN CENTRAL RAILROAD CO.

1. MASTER AND SERVANT — FINDINGS OF INDUSTRIAL ACCIDENT BOARD — APPEAL AND ERROR.

   The Supreme Court will not review the findings of fact of the industrial accident board except to determine whether there is any evidence to support the award.

2. SAME.

   The evidence to support findings of the industrial accident board need not be direct; it may be circumstantial.

3. SAME—CREDIBILITY OF WITNESSES.

The industrial accident board not only passes on the cred-
ibility of the witnesses, but it draws its inferences from
the circumstances and the facts which it finds estab-
lished.

4. SAME — WORKMEN'S COMPENSATION ACT — DEATH — COURSE OF
EMPLOYMENT—EVIDENCE—SUFFICIENCY.

Where deceased, a railroad passenger fireman, made a run
to and from a certain city each day and generally had
about 6 hours between the time of arrival and the return
trip at 4:10 in the afternoon, but was subject to call for
emergency duty during such period, and was required to
leave word where he might be found if he left the prem-
ises, and the evidence tended to show that after returning
from his noon meal, and while waiting for the return
trip, he changed his street clothes for his working clothes
at 1 o'clock in the bunk house provided for men waiting
to be called on regular or special runs, and went to his
engine at once in the roundhouse, and at about 2:30 was
found dead on the cement floor of the roundhouse beside
his engine with his working clothes on, his face and hands
both greasy, and an autopsy disclosed that his death was
due to concussion of the brain, and it further appeared
that he was expected to be able to take his engine upon
the trip one hour before leaving time of the train, and
also to see that it had proper firing tools, for the perform-
ance of which duty there was no set time, and that occa-
sionally he did some work on his engine while it was in
the roundhouse, the evidence was sufficient to sustain a
finding of the industrial accident board that deceased
met his death while on duty.[1]

Certiorari to Industrial Accident Board.  Submit-
ted October 17, 1917.  (Docket No. 111.)  Decided
December 27, 1917.

Louise E. Meyers presented her claim for compen-
sation against the Michigan Central Railroad Com-
pany for the accidental death of her husband in de-
fendants' employ.  From an order awarding compen-
sation, defendant brings certiorari.  Affirmed.

[1]On construction and effect of workmen's compensation acts,
generally, see note in L. R. A. 1916A, 23, L. R. A. 1917D, 80.

*Kleinhans, Knappen & Uhl,* for appellant.

*R. M. Shivel* and *Geddes Van Brunt* (*John L. Downing,* of counsel), for appellee.

FELLOWS, J. Plaintiff and decedent were husband and wife. They lived at Jackson. Deceased was about 30 years old, in good health, and was employed as a passenger fireman by the defendant. His run was on the Grand Rapids branch, leaving Jackson at 6:40 in the morning and arriving at Grand Rapids at 9:40. On the return run he was due to leave Grand Rapids at 4:10 in the afternoon. There was testimony that his pay was on the mileage basis. Upon arriving at Grand Rapids it was the custom and the duty of the crew to detach the engine from the train and take it to the premises upon which was located the roundhouse of defendant on Albany street. Here it was left at the cinder pit, where it was taken in charge by the roundhouse crew and put in the roundhouse. On these premises was what is called the "bunk house," consisting of an old box car which had been fitted up for the accommodation of the employees, with bunks, chairs, a table, and water and necessary articles to be used in cleaning up after the run. From the arrival of the firemen at the roundhouse premises until leaving time they were subject to call; that is, they were subject to be called out on other runs in cases of emergency, and if they left the premises were expected to leave information as to where they could be reached. Upon the return run they were expected to be ready to take the engine at the cinder pit at 3:10, an hour before leaving time of the train. Article 7, of the schedule of wages for firemen, of the company, contains the following:

"The fireman shall not be relieved of responsibility of knowing that engines for which they are called are properly equipped for service."

This rule seems to be understood as applying to the tools used by the fireman and to require him to see that the engine was equipped with such tools. There was some slight testimony, and it is very slight, from which the board might infer that occasionally the fireman did some small work on the engine while they were in the roundhouse.

On the occasion in question, deceased left his engine at the cinder pit, went to the bunk house, where he washed up, put on his street clothes, and remained until dinner time. He was gone about half an hour for his meal. About 1 o'clock he put on his working clothes complete, and shortly thereafter went over and got on his engine in its stall in the roundhouse. The floor of the cab of the engine was about five feet above the floor of the roundhouse. Some fellow employees visited with him there a short time and left. Shortly before half past 2 his dead body was found on the cement floor of the roundhouse beside his engine. His left foot was hooked up over the water hose, and his right foot was lying on the floor towards the engine. His hands were greasy, both inside and outside, and his face had grease upon it. An autopsy was performed by a competent physician, who gave his opinion that death was produced by concussion of the brain. All the organs except the brain were found to be in a healthy condition. In the regular course the case reached the industrial accident board, and an award in favor of plaintiff by that body is here reviewed by certiorari.

It may not be necessary to repeat what we have so frequently said that this court does not review the findings of fact of the board, except to determine whether there is any evidence to support the award. The evidence may not be direct; it may be circumstantial. The board not only passes on the credibility of witnesses, but draws its inferences from the cir-

cumstances and the facts which it finds established. We may reverse awards for a failure of evidence to support them, but we are not the triers of the facts. With this view in mind, we approach the consideration of this case.

Upon the argument considerable attention was given to the case of *Papinaw* v. *Railway Co.*, 189 Mich. 441 (155 N. W. 545), and this is true of the briefs. Counsel for plaintiff insists that that case is controlling, while defendant's counsel claims that it is distinguishable from the case at bar and that the instant case should be controlled by *Hills* v. *Blair*, 182 Mich. 20 (148 N. W. 243), *Spooner* v. *Detroit Saturday Night Co.*, 187 Mich. 125 (153 N. W. 657, L. R. A. 1916A, 17), and kindred cases.

While the details of the accident in the *Papinaw Case* differ from those in this case, we think the underlying and controlling principle is the same. There the deceased was a section foreman who lived near the track and was required to be on call at all times. Here the fireman, while in Grand Rapids, was subject to call at all times. In case of emergency he might be sent out at any time, and the emergency was determined by the defendant. The master had provided the bunk house which might be used by those who were waiting their regular or special runs to which they might be called. If the fireman left the premises, he was expected to leave word where he could be found. This is not a case where a workman had completed his day's labor and had returned to his home and was free from any control or orders of the master. From the time deceased left Jackson in the morning until his return there at night he was constantly subject to the orders of the company and his movements under its control. It was said by Mr. Justice STEERE, speaking for the court in the *Papinaw Case:*

"This case is readily distinguishable from that line of decisions cited by respondent in which the employee by his contract of hiring was engaged to work during certain hours, and was injured away from his place of employment, while going to or returning from work, or was absent during some intermission for meals, or otherwise, not then upon his employer's business nor subject to his control, at liberty for the time to go where and do what he pleased, free from any claim of the employer upon his services. Here it is shown conclusively that by his contract of hiring deceased was at the time of his death required to be within reach, liable at any time to be called to work upon the track, and in that sense on duty subject to his employer's orders and control."

Added applicability to the present case should be given the *Papinaw Case* from the fact that we there cited with approval and quoted from the case of *St. Louis, etc., R. Co.* v. *Welch*, 72 Tex. 298 (10 S. W. 529, 2 L. R. A. 839). This case involved an accidental injury to a workman at the time asleep in a bunk car, the accident occurring about 3 o'clock in the morning. He was subject to call at any time, and therefore was held to be on duty at the time of the injury. We repeat a portion of our quotation from that case, as it is pertinent here:

"He was liable to be called upon at any moment to go out with his gang upon duty upon the road. We think he must be held to have been upon duty at the time he received the injury. That the accident occurred when he was resting from his labors, we think makes no difference. He was subject to the call of the company at the time, and his case differs from that of other servants who engage for certain hours of employment and who are injured during the intervals in which the master has no claim upon their services."

In the *Papinaw Case*, as in this case, the deceased was not a trespasser. Here he had a duty to perform in the cab before the engine started for Jackson, an imperative duty; under the rule quoted, he was

bound to see that the engine was equipped with the firing tools. Other firemen called as witnesses inform us that there is no set time for the performance of that duty. We have also adverted to the fact that there was some slight testimony of a custom of firemen making small repairs on the engine. While the probative force of this testimony may have been weakened by cross-examination, we cannot weigh the testimony; that was for the board.

The case of *Hills* v. *Blair, supra,* is clearly distinguishable from the instant case. It belongs to that class of cases referred to by Mr. Justice STEERE in the *Papinaw Case.* There the deceased was on his way to dinner, a mission of his own. He was free from the control and relieved of directions by his employer. In the case of *Spooner* v. *Detroit Saturday Night Co., supra,* the employee was fatally injured while running an elevator, something in no way connected with his employment, while here deceased was on the engine he was employed to fire.

Nor do we find it so conjectural as to the purpose of deceased in going on the cab as to bring it within the realm of guesswork. If he had gone upon the cab for his own purposes as suggested by defendant, to get a drink of water from a jug kept in the cab, or some tobacco kept in the cab seat, he would scarcely have gone to the trouble of divesting himself of his street clothes and donning his working garments. When he put on his working clothes and went to the cab, it was evident that he had prepared himself for whatever work was necessary and the return part of his day's work. His greasy hands, when found dead by the side of his engine, were some evidence that he had been performing some labor on the engine; that he had been discharging some service for the master. We are not persuaded that we should reach a different result from that reached in the *Papinaw Case,* or that

the award is not supported by any competent evidence.

Without attempting a résumé of them, the following cases will be found to be of interest on this question: *Mackinnon* v. *Miller*, 2 B. W. C. C. 64; *Pomfret* v. *Railway Co.*, 5 W. C. C. 22; *Munn* v. *Industrial Board*, 274 Ill. 70 (113 N. E. 110).

The award is affirmed.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.