BRAXTON v CHEVROLET GREY IRON FOUNDRY DIVISION OF
GENERAL MOTORS CORPORATION

Docket No. 54787. Argued May 6, 1975 (Calendar No. 4).—Decided
June 3, 1976.

Plaintiff Willie Braxton sustained a fracture of the pelvis during
1963 in the course of his employment at defendant Chevrolet
Grey Iron Foundry Division of General Motors Corporation.
Plaintiff began suffering severe back and leg pain. Although he
returned to his job, which required lifting heavy loads, his
pains continued and three years after the accident he took sick
leave and then early retirement. Defendant claims the fracture
caused all of plaintiff's pain and therefore workmen's compen-
sation benefits are payable only for the 1963 injury. Plaintiff
maintains the fracture healed and that a pre-existing osteoar-
thritic condition was made symptomatic by the injury and
aggravated by continued heavy labor. He has petitioned for
permanent disability benefits as a consequence of an occupa-
tional disease as of the date he took sick leave. The Workmen's
Compensation Appeal Board denied the additional benefits. The
Court of Appeals, Bronson, P. J., and Quinn and Danhof, JJ.,
denied leave to appeal (Docket No. 15862). Plaintiff appeals.
*Held:*

1. A finding that an employee's pre-existing arthritis was
aggravated by a traumatic accident as well as by the character
of the employee's work does not as a matter of law prohibit a
finding that the employee suffered from an occupational dis-
ease.

2. The language of the appeal board's decision does not
specifically find that the disability was due to the accidental
injury.

3. A pre-existing occupational disease or a concomitantly
created occupational disease can be the cause of the disability
even though the disease is aggravated by an accident or by
subsequent work conditions or by both. The referee and the

REFERENCES FOR POINTS IN HEADNOTES

[1, 4, 5] 82 Am Jur 2d, Workmen's Compensation §§ 296, 298, 333,
334.

[2, 3, 6] 82 Am Jur 2d, Workmen's Compensation §§ 616, 631.

appeal board apparently proceeded on the incorrect legal assumption that once the accident occurred a pre-existing occupational disease cannot be the cause of disability.

Reversed and remanded for further action.

Justice Fitzgerald, with whom Justice Coleman concurred, dissented on the grounds that the Constitution and the statute are controlling. There is evidence from the testimony of the plaintiff that the plaintiff sustained a compensable injury in 1963 and that his lower back problems began at that time and that he did not thereafter sustain a new injury within the meaning of the act. Whether disability is attributable to a single event is a question of fact, and the appellate courts may not review the findings of fact of the Workmen's Compensation Appeal Board except to determine whether there is any evidence to support the award.

OPINION OF THE COURT

1. WORKMEN'S COMPENSATION—OCCUPATIONAL DISEASE—PRE-EXISTING CONDITION.

A finding by the Workmen's Compensation Appeal Board that an employee's pre-existing arthritis was aggravated by a traumatic accident as well as by the character of the employee's work does not as a matter of law prohibit a finding that the employee suffered from an occupational disease.

2. WORKMEN'S COMPENSATION—APPEAL BOARD—FINDING OF FACT.

The primary function of the Workmen's Compensation Appeal Board is finding the controlling facts which, in the absence of fraud and within the board's powers, shall be conclusive (MCL 418.861; MSA 17.237[861]).

3. WORKMEN'S COMPENSATION—APPEAL BOARD—QUESTIONS OF LAW.

The Court of Appeals and the Supreme Court shall have power to review questions of law involved in any final order of the Workmen's Compensation Appeal Board; error may be committed by basing a finding of fact on a misconception of law and by failing to apply the law correctly to the finding of fact (MCL 418.861; MSA 17.237[861]).

4. WORKMEN'S COMPENSATION—PRE-EXISTING CONDITION—AGGRAVATION.

An employee who suffers a compensable injury, returns to work and is further disabled as a result of aggravation of the injury is entitled to workmen's compensation for the entire disability; a pre-existing disease does not bar recovery of workmen's

compensation when subsequent occupational injury aggravates the condition to the point of disability or precipitates the disability.

5. WORKMEN'S COMPENSATION—OCCUPATIONAL DISEASE—PRE-EXISTING CONDITION—AGGRAVATION.

A pre-existing occupational disease or a concomitantly created occupational disease may be found to be the cause of an employee's disability even though the disease is aggravated by a subsequent accident or by subsequent work conditions or by both.

### DISSENTING OPINION

#### COLEMAN and FITZGERALD, JJ.

6. WORKMEN'S COMPENSATION—APPEAL BOARD—FINDINGS OF FACT.

*Whether disability is attributable to a single event is a question of fact, and the appellate courts may not review the findings of fact of the Workmen's Compensation Appeal Board except to determine whether there is any evidence to support the award (Const 1963, art 6, § 28; MCL 418.861; MSA 17.237[861]).*

*Marston, Sachs, O'Connell, Nunn & Fried, P. C.* (by *B. M. Fried* and *Douglas W. Johnson)* for plaintiff.

*Braun, Kendrick, Finkbeiner, Schafer & Murphy* for defendant.

WILLIAMS, J. The dispositive issue in this workmen's compensation case is whether the employee's disability resulted from an occupational disease or a traumatic accident. In the former case, his date of injury would be the last day of work when the more beneficial new act applied, whereas in the latter case, it would be the date of the traumatic injury which preceded the effective date of the new act.

The hearing referee concluded:

"Further I cannot find that plaintiff sustained a new injury within the meaning of the act *[i.e.*

through occupational disease] after the 9/30/63 injury."

The fact the employee did not sustain a new injury, that is, did not contract an occupational disease subsequent to the 9/30/63 injury is not legally controlling. If the employee suffered from a prior occupational disease and if that occupational disease was the cause of his disablement, the fact that he also suffered the 9/30/63 injury would not be critical, even if it aggravated his original occupational disease.

The Workmen's Compensation Appeal Board (WCAB) affirmed the hearing referee after recognizing that the only doctor to testify "spoke not only of work aggravating arthritis, but also of *an accident* aggravating it". (WCAB emphasis.)

This quotation indicates that the WCAB treated the case as one where the arthritis existed before the *"accident* aggravating it." It must therefore have supported the referee's fact-finding on that basis.

The fact, if it is a fact, that the employee's preexisting arthritis was aggravated by a traumatic accident as well as by the character of the employee's work, does by no means inevitably mean that the cause of disablement was the accident rather than the occupational disease. To so conclude is not an error of fact-finding. It is an error of law.

The WCAB, therefore, is reversed and the matter remanded for further action not inconsistent with this opinion.

I—FACTS

Plaintiff Willie Braxton was employed at the Chevrolet Grey Iron Foundry in Saginaw for ap-

proximately 22 years, serving as a shot blast tender for the last 12 to 14 years. As a blast tender, he was required to lift bags of shot weighing 50 to 100 pounds, 50 to 100 times a day, as well as lifting six to twelve 40-pound castings whenever the machine broke down. He also swept up around the machines, carrying shovelsful of shot weighing approximately 25 pounds over to a hopper.

In September 1963, plaintiff sustained a fracture of the pelvis when a plant truck hit a box, and he was squeezed between two gondolas.

He began suffering severe back and leg pain. Although he returned to the same job six weeks later, his pains continued, and three years after the accident he took sick leave and then early retirement. Defendant paid workmen's compensation benefits voluntarily for the time plaintiff missed work during this period due to his back problem.

Defendant contends that the reason for all plaintiff's problems is the pelvic fracture and that therefore benefits are payable only for the 1963 injury. Plaintiff maintains that the fracture healed, and that a pre-existing osteoarthritic condition was first made symptomatic by the 1963 injury and further aggravated by continued heavy labor until he took sick leave on October 28, 1966 and early retirement July 1, 1967. Therefore, he says, he is permanently disabled as a consequence of an occupational disease, and the date of disability is October 28, 1966. This would entitle him to higher benefits than would defendant's interpretation, and he has petitioned for benefits on this basis.

At the hearing, the only medical testimony came from a physician who testified on plaintiff's behalf. He said the fracture had healed and was holding

solidly. He also testified that plaintiff now suffered from chronic extensive osteoarthritis of the lumbar spine with nerve root irritation. He stated that plaintiff's work was heavy and could aggravate that condition.

As to the relationship of the accident to the osteoarthritis, the doctor testified, on cross-examination:

"*A:* Yes. I would rather not state that the accident itself caused this condition because arthritis is diffuse in nature and we find it in more than one place involving more than one joint. I hesitate to state that a particular accident caused it, but would rather state that if it were present[1] an accident certainly could aggravate it."

Plaintiff testified that his back had hurt him constantly ever since the accident and that every once in a while he had to take time off.[2] Plaintiff

---

[1] Although not testified to by the physician, hospital records made at the time of plaintiff's injury indicate that about 12 years before he had had back difficulty, thought to be a disc protrusion. According to the records, he had recovered "and got along quite well".

[2] On cross-examination, the crucial part of plaintiff's testimony was:

"*Q:* Now, since your injury of September 30, 1963, I believe you said that you went back to the same job, is that correct?

"*A:* Yes, sir.

"*Q:* And that you continued doing the same work that you had done before?

"*A:* That's right.

"*Q:* But your back hurt you so much that every once in awhile you had to take time off, is that correct?

"*A:* That's right.

"*Q:* And has it been the same way, hurting—

"*A:* It's been hurting constantly ever since I've been out of there.

"*Q:* I see. And did it hurt you constantly since your accident of September, 1963?

"*A:* It hurts me constantly because I would go to the first-aid and get treatments.

"*Q:* Then has it always bothered you since September, 1963, to lift these shot bags?

"*A:* Well, it bothered me, it kept bothering me all the time, for the whole while since I got hurt. I never had no complaint till I got hurt.

also testified that he had told the foreman the work "was making me feel bad and hurt me a lot". He also said that when he lifted a heavy bag of shot it would hurt his back.

The hearing referee, held, without analysis, that he could not "find that plaintiff sustained a new injury within the meaning of the act after the 9/30/63 injury". A majority of the WCAB found "[t]here is an evidentiary basis for the referee's fact finding and the record before us is not compelling of reversal."

The board considered it significant that plaintiff "testified to a pattern of work 3-4 weeks, then being off work 2-3 weeks", following an initial six-week loss of time immediately following the accident.

The board also found:

"Testimony by Dr. Lipton not as supportive of plaintiff's claim and a basis for the referee's choice of injury date included the doctor's comment that plaintiff told him the blast tender job was *not* heavy but was dirty. On cross-examination, he admitted his diagnosis of nerve root irritation was based on plaintiff's subjective complaints and that all neurological tests are normal. Further, Dr. Lipton found 'extensive arthritis' involving all of the lumbar vertebral segments and he believed plaintiff probably has more arthritis extending up his back also. He spoke not only of work aggravating arthritis, but also of *an accident* aggravating it."

The WCAB minority, however, referring to Bu-

"*Q:* So all of your complaints have come on since you got hurt in September, 1963?
"*A:* That's right.
"*Q:* And you continued to work until you decided to take an early retirement because you felt you couldn't go on doing that work anymore?
"*A:* That's right."

reau records, reports the lost time situation somewhat differently:

"An examination of the whole record quite easily reveals to the reader that plaintiff at age 67 (at time of hearing) had very poor recall for dates or specific periods of lost time. Under skillful cross examination the impression is made that lost time was frequent because of constant symptoms following the 1963 injury. However, reports contained within the bureau file are more definitive of the exact number and frequency of lost time periods. These reports consisting of forms 101 and 102 as well as form 103, filed by defendant in accord with the provisions of the act reveal that plaintiff lost six weeks and five days immediately following the injury, returned and worked two weeks before losing another week during the period December 2, 1963, to December 8, 1963. Thereafter, plaintiff lost no more time on account of his back until November 27, 1965, at which time he lost two weeks and one day. According to plaintiff's testimony he found that he could not continue his work because of back and leg pain and so took a sick leave beginning October 28, 1966, culminating in *early* retirement on July 1, 1967. Plaintiff testified that he was paid compensation for all periods of lost time. If lost time was more frequent than set out above, defendant has not reported it as required by statute."

## II—INADEQUACY OF REFEREE AND WCAB ACTION

"The primary function of the appeal board is that of finding what to it are the controlling facts." *Koschay v Barnett Pontiac, Inc,* 386 Mich 223, 230; 191 NW2d 334 (1971). "The findings of fact made by the board acting within its powers, in the absence of fraud, shall be conclusive. The court of appeals and the supreme court shall have power to review questions of law involved in any final order of the board". MCLA 418.861; MSA 17.237 (861). Error may be committed by basing a finding of fact on a misconception of law and by failing to

correctly apply the law to the finding of fact. *Zaremba v Chrysler Corp*, 377 Mich 226, 228; 139 NW2d 745 (1966).

The question at issue in this case was whether the disability was caused by an occupational disease rather than by an accidental injury. If caused by an occupational disease, then the date determining compensation payments would be the last day worked, MCLA 418.301; MSA 17.237(301),[3] rather than the earlier date of an accidental injury. The later date would qualify the employee under a new act for higher benefits.[4] See MCLA 412.9; MSA 17.159 [now MCLA 418.351; MSA 17.237(351)].

The factual determination the WCAB had to make was whether the disability was caused by an occupational disease or the accidental injury.

The hearing referee and the WCAB made that determination only inferentially and by relying on a misconception of law. Neither the hearing referee nor the appeal board said specifically "the disability was due to the accidental injury", or, "the disability was due to the occupational disease".

Instead, the hearing referee said, "Further, I cannot find that plaintiff sustained a new injury within the meaning of the act *[i.e.,* an occupational injury] after the 9/30/63 injury".

This cryptic remark does not specifically find that the disability was due to the accidental injury. For example, there may have been a preexisting disease, as the WCAB presumed, and that

---

[3] "Time of injury or date of injury as used in this act in the case of a disease or in the case of an injury not attributable to a single event shall be the last day of work in the employment in which the employee was last subjected to the conditions resulting in disability or death."

[4] 1965 PA 44.

could have caused the disability, with or without aggravation by the accidental injury. The language of the decision also admits of the possibility, and by no means an improbable one, that there might have been an occupational disease created simultaneously with the occurrence of the accidental injury (note the decision says "new injury * * * *after").

The WCAB opinion is longer, but likewise lacking in a specific finding whether it was the accident or the occupational disease that caused the disability. In any event, it concluded:

"There is an evidentiary basis for the referee's fact-finding and the record before us is not compelling of reversal."

In other words, the WCAB made no specific finding and then endorsed the referee's attempt at fact-finding, which we have seen was itself not fact-finding at all as far as the dispositive facts were concerned.

### III—LAW OF AGGRAVATION

Not only did the referee and the WCAB fail to do specifically what they were charged with doing, they each proceeded under a mistaken conception of the law.

The referee and the WCAB both operated under a misconception of law that where there is a pre-existing occupational disease, a subsequent traumatic accident, a worsening of the employee's physical condition because of the traumatic accident, because of the conditions of work or because of both, and final disability, the disability must be considered to be due to the traumatic accident, *unless* after the accident there is a newly created occupational disease.

This is neither logic nor the law.

It isn't logical, because (1) the prior occupational disease might have been so serious that disability was inevitable, (2) the consequences of the traumatic accident were so negligible as to be of no effect, (3) the impact of working conditions subsequent to the traumatic accident might have been so serious as to override whatever debilitating force the traumatic accident had.

It isn't the law. The law in Michigan is that a pre-existing occupational disease can be aggravated by a traumatic accident or additional suffering of unfavorable work conditions, and be the cause of a worker's disability.

There appear to be no cases on all fours with the facts of this case, but there is one case which comes close.

In *Smith v Lawrence Baking Co,* 370 Mich 169; 121 NW2d 684 (1963), the employee, a bread wrapper machine set-up man, worked successively for four bakeries. He suffered back pains at all four, and incurred a traumatic injury in the fourth. The latter two bakeries were out of state, and the specific issue was whether the first bakery in Michigan, where the employee first exhibited symptoms of his occupational disease, or the last Michigan bakery was liable. The referee apportioned liability between the two Michigan employers. The WCAB held the first Michigan employer liable.

We reversed. We said:

"Who should pay forms the basis of the present controversy [i.e. the first or last employer or the employer where the injury took place]. The answer to this question does not depend on whether plaintiff's employment with Lawrence or Gauss or Kroger or Myers constituted the primary and principal cause of his

symptoms and disability. The act specifically defines a much different basis for the determination of employer liability.

"The first sentence of part 7, § 9, of the workmen's compensation act provides:

" 'The total compensation due shall be recoverable from the employer who last employed the employee in the employment to the nature of which the disease was due and in which it was contracted.' (CL 1948, § 417.9 [Stat Ann 1960 Rev § 17.228].)" [Now MCLA 418.435; MSA 17.237 (435).] 370 Mich 169, 175; 121 NW2d 684.

Quoted and followed in *Aseltine v Leto Construction Co,* 43 Mich App 559, 560; 204 NW2d 262 (1972).

The Michigan law is also certainly clear in a related area that the aggravation of an employee's prior injury does not preclude him from receiving benefits for the more serious situation.

The principle is black letter law. "[W]here an employee suffers a compensable injury and thereafter returns to work and as a result thereof his injury is *aggravated and accelerated so that he is further disabled than before,* he is entitled to compensation for his entire disability." 99 CJS, Workmen's Compensation, § 180, p 607. (Emphasis added.)

Thus, "a pre-existing disease does not bar recovery of workmen's compensation when subsequent occupational injury aggravates the condition to the point of disability or precipitates the disability". *Redfern v Sparks-Withington Co,* 353 Mich 286, 299; 91 NW2d 516 (1958). See *Sheppard v Michigan National Bank,* 348 Mich 577; 83 NW2d 614 (1957); *Coombe v Penegor,* 348 Mich 635; 83 NW2d 603 (1957). See also *Zajac v Detroit Housing Commission,* 1972 WCAB 160.

CONCLUSION

We reverse because both the referee and the WCAB appeared to proceed on the legal assumption that once an accidental injury occurs a pre-existing occupational disease cannot be the cause of disability. That is not the law. A pre-existing occupational disease or a concomitantly created occupational disease can be the cause of disability. This is true even though the occupational disease is aggravated by the accident or by subsequent work conditions or by both.

Reversed and remanded for further action not inconsistent with this opinion.

KAVANAGH, C. J., and LEVIN, J., concurred with WILLIAMS, J.

LINDEMER and RYAN, JJ., took no part in the decision of this case.

FITZGERALD, J. *(dissenting)*. I dissent for the reason that the constitution[1] and the statute[2] are controlling. There is evidence on this record which supports the finding of the referee and the WCAB majority that plaintiff sustained a compensable injury on September 30, 1963, but that he did not thereafter sustain "a new injury within the meaning of the act * * * ". That evidentiary support is the testimony of plaintiff himself that his lower back problems began with his 1963 injury:

"*Q.* Now, since your injury of September 30, 1963, I believe you said that you went back to the same job, is that correct?

"*A.* Yes, sir.

---

[1] Const 1963, art 6, § 28.
[2] MCLA 418.861; MSA 17.237(861).

"*Q.* And that you continued doing the same work that you had done before?

"*A.* That's right.

"*Q.* But your back hurt you so much that every once in a while you had to take time off, is that correct?

"*A.* That's right.

"*Q.* And has it been the same way, hurting—

"*A.* It's been hurting constantly ever since I've been out of there.

"*Q.* I see. And did it hurt you constantly since your accident of September, 1963?

"*A.* It hurts me constantly because I would go to the first-aid and get treatments.

"*Q.* Then has it always bothered you since September, 1963, to lift these shot bags?

"*A.* Well, it bothered me, it kept bothering me all the time, for the whole while since I got hurt. I never had no complaint till I got hurt.

"*Q.* So all of your complaints have come on since you got hurt in September, 1963?

"*A.* That's right.

"*Q.* And you continued to work until you decided to take an early retirement because you felt you couldn't go on doing that work anymore?

"*A.* That's right."

The question of whether disability is "attributable to a single event"[3] is a question of fact.

In *Carter v Kelsey-Hayes Co,* 386 Mich 610, 615; 194 NW2d 326 (1972), this Court restated the limitations to its jurisdiction in cases such as these:

"We now reiterate the characterizations of our appellate function in such cases, as set forth in *Thornton v Luria-Dumes Co-Venture,* 347 Mich 160, 162 [79 NW2d 457] (1956), initially quoting from *Meyers v Michigan Central R Co,* 199 Mich 134, 137, 138 [165 NW 703] (1917):

---

[3] MCLA 412.1; MSA 17.151. Now MCLA 418.301; MSA 17.237(301).

" ' "[T]his Court does not review the findings of fact of the board, except to determine whether there is any evidence to support the award. The evidence may not be direct; it may be circumstantial. The board not only passes on the credibility of witnesses, but draws its inferences from the circumstances and the facts which it finds established. We may reverse awards for a failure of evidence to support them, but we are not the triers of the facts. With this view in mind, we approach the consideration of this case."

" 'Our jurisdiction, invoked upon issuance and return of certiorari to the workmen's compensation department, is markedly limited. The writ brings us questions of law only. It does not permit scale-weight of evidence and inference here, as on appeals from circuit court judgments, to determine whether administrative findings of fact offend rules governing clear weight and preponderance. Our obligation is to accept, without question, findings that are certified here if there be any evidence whatever to sustain those findings, regardless of thought or suggestion addressed to improbability thereof.' "

I would affirm.

COLEMAN, J., concurred with FITZGERALD, J.