OSANTOWSKI v PIGEON MANUFACTURING COMPANY

Docket No. 66306. Submitted October 11, 1983, at Lansing.—Decided
February 6, 1984. Leave to appeal applied for.

Adam H. Osantowski, an employee of Pigeon Manufacturing
Company from 1968 until March 3, 1970, was injured when an
overhead spot welder assembly collapsed on February 13, 1969.
The assembly struck him a glancing blow across the lower back
and right leg and ankle, throwing him to the floor and knock-
ing him out. At the time of Osantowski's injury, Citizens
Insurance Company was Pigeon's insurance carrier. Osantowski
underwent periodic treatment for back trouble and had two
operations on his lower spine to correct what had been diag-
nosed as a herniated disc. The symptoms continued but Osan-
towski refused further attempts at spinal surgery to alleviate
his symptoms and stabilize his back. Citizens paid workers'
compensation benefits to Osantowski for a number of years
until Osantowski filed an amended petition alleging total and
permanent disability. On October 22, 1976, Citizens filed a
petition with the Bureau of Workers' Disability Compensation
for a determination of rights, alleging that Osantowski's dis-
ability did not arise from the original injury but from a
subsequent aggravation thereof. If Citizens' claim proved to be
correct, Employers Mutual of Wausau, Pigeon's insurer at the
time Osantowski terminated his employment, would be solely
responsible for the payment of benefits. Citizens' petition
sought reimbursement from Employers for the benefits it had
paid to Osantowski. The hearing referee found that Osantowski
received a personal injury on March 3, 1970, that he was
entitled to workers' compensation benefits, and that Employers
Mutual must pay those benefits and reimburse Citizens for all
prior payments since March 3, 1970. Employers Mutual ap-
pealed to the Workers' Compensation Appeal Board, which

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 82 Am Jur 2d, Workmen's Compensation § 333.
[3] 82 Am Jur 2d, Workmen's Compensation §§ 296, 298.
[4, 5] 82 Am Jur 2d, Workmen's Compensation § 635.
[6] 82 Am Jur 2d, Workmen's Compensation §§ 485, 605.

affirmed the hearing referee's decision but modified it so that Employers Mutual need reimburse Citizens only for compensation paid by Citizens after October 22, 1975, one year prior to the filing of Citizens' petition. Citizens appeals the modification by leave granted. Employers Mutual filed a cross-appeal alleging that the appeal board erred in finding that the appropriate date of injury was Osantowski's last day of work rather than the February, 1969, date of his injury and disability. *Held:*

1. The appeal board wrongly determined the date of injury. The record shows that there was one identifiable injury, that of February 13, 1969, causing a degenerative disc disease which continued unchanged thereafter. The symptoms of the disease continued, their presence when work tasks were performed merely evidencing the continuation of the condition, and there is no evidence to support the appeal board's finding that the condition was aggravated by the physical efforts of employment. Since full liability is placed upon the carrier covering the risk at the time of the most recent injury that bears a causal relation to the disability, *i.e.,* February, 1969, Citizens is solely liable for payment of workers' compensation benefits to Osantowski.

2. The question of whether the one-year-back rule applies to a claim of one insurer for reimbursement from a second where the first insurer has paid benefits that should have been paid by the second need not be addressed.

Reversed and remanded.

DANHOF, C.J., dissented. He would hold that there is competent evidence in the record to support the appeal board's finding that Osantowski's disability arose from the subsequent aggravation of the February, 1969, accident. Because reversal is warranted only where there is no competent evidence to support such findings, he would affirm the board's finding as to the date of injury. He would also hold that the appeal board erred in applying the one-year-back rule to limit the amount that Employers must reimburse Citizens. The one-year-back rule was improperly applied because it was not raised by Employers before the hearing referee or briefed by Employers before the appeal board. The one-year-back rule is a defense akin to a statute of limitations defense and may be waived. Employers' failure to raise the defense before the hearing referee precluded its application by the appeal board. He would affirm the board's factual findings and reverse on the application of the one-year-back rule.

Opinion of the Court

1. Workers' Compensation — Disability — Successive Injuries.

The rule in successive injury cases is to place full liability upon the workers' compensation insurance carrier covering the risk at the time of the most recent injury that bears a causal relation to the disability;. if the second injury takes the form merely of a recurrence of the first, and if the second incident does not contribute even slightly to the causation of the disabling condition, the insurer on the risk at the time of the original injury remains liable for the second, but if the second incident contributes independently to the injury, the second insurer is solely liable, even if the injury would have been much less severe in the absence of the prior condition, and even if the prior injury contributed the major part to the final condition (MCL 418.301[1]; MSA 17.237[301][1]).

2. Workers' Compensation — Successive Injuries — Multiple Insurers.

Physical deterioration following an original injury to an employee may be treated as an injury not attributable to a single event for purposes of determining which of two insurance carriers is liable for payment of workers' compensation benefits if there is evidence indicating that the physical demands of subsequent employment aggravated the original injury.

3. Workers' Compensation — Occupational Disease — Degenerative Disc Disease.

Degenerative disc disease can develop from the prolonged wear and tear of heavy lifting without any single traumatic injury.

4. Workers' Compensation — Date of Injury — Appeal Board — Findings of Fact.

The date of an employee's injury is a question of fact, and findings by the Workers' Compensation Appeal Board as to the date are conclusive if there is any competent evidence to support them (MCL 418.861; MSA 17.237[861]).

Dissent by Danhof, C.J.

5. Workers' Compensation — Appeal Board — Findings of Fact.

*Findings of fact made by the Workers' Compensation Appeal Board are binding on appeal if the record discloses any evidence on which such findings could be based.*

6. Workers' Compensation — One-Year-Back Rule — Waiver.

*The one-year-back rule is a defense akin to the statute of limitations and may be waived (MCL 418.833; MSA 17.237[833]).*

*Davidson, Breen & Doud, P.C.* (by *Richard J. Doud),* for Pigeon Manufacturing Company and Citizens Insurance Company.

*Hayim I. Gross,* for Pigeon Manufacturing Company and Employers Mutual of Wausau.

Before: DANHOF, C.J., and BRONSON and W. R. PETERSON,* JJ.

W. R. PETERSON, J. This is a workers' compensation dispute between two insurers, one of which, Citizens Insurance Company, was the employer's insurance carrier at the time plaintiff was injured in an industrial accident and which, when plaintiff later became unable to work, paid benefits for a number of years. When plaintiff subsequently filed an amended petition alleging total and permanent disability, Citizens filed a petition for determination of rights, alleging that his disability did not arise from the original injury but from a subsequent aggravation thereof. If true, Employers Mutual of Wausau, the employer's insurer when plaintiff's employment terminated, would be solely responsible for the payment of benefits,[1] hence Citizens' petition sought reimbursement from Employers for the benefits it had paid to plaintiff.

This appeal, on leave granted, presents two factually related questions. The first is as to the date

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] At the time plaintiff terminated his employment MCL 418.301(1); MSA 17.237(301)(1) provided:

"Time of injury or date of injury as used in this act in the case of a disease or in the case of an injury not attributable to a single event shall be the last day of work in the employment in which the employee was last subjected to the conditions resulting in disability or death."

of injury within the meaning of the Worker's Disability Compensation Act, the determination thereof establishing responsibility as between the different carriers who were on risk for the employer during the employment period in question. The WCAB answered the question in favor of Citizens, finding that a specific injury to plaintiff, caused by an industrial accident, had been aggravated by the physical exertion of plaintiff's job duties thereafter, and fixing the date of injury as plaintiff's last day of employment.

That determination, making Employers Mutual responsible for the payment of benefits, presented the second question. When one insurer (Citizens) has paid benefits that should have been paid by another (Employers Mutual), does the "one-year-back" rule[2] apply to the claim of the first insurer for reimbursement from the second?

In a divided opinion,[3] the WCAB answered the second question in the affirmative, limiting Citizens' right of reimbursement to the period commencing one year prior to its making of the claim. Having concluded that the WCAB wrongly determined the date of injury, we reverse without consideration of the second question. The correct date of injury fixes the liability of Citizens for all benefits.

---

[2] MCL 418.833(2); MSA 17.237(833)(2) provides:

"When an employer or carrier takes action to recover overpayment of benefits, no recoupment of money shall be allowed for a period which is more than one year prior to the date of taking such action."

The WCAB held that the general statute of limitations was inapplicable on the reasoning that nothing in the Worker's Disability Compensation Act authorized its application to such claims, a conclusion which we need not review on the facts herein; but *quaere*, whether it is not equally true that nothing in the act proscribes application of the general limitations statute to such claims?

[3] A division reflecting diverse opinions by different panels of the WCAB; see *Shepard v McInerney Spring & Wire*, 1982 WCABO 272, and *Painter v Allied Supermarkets*, 1980 WCABO 1108.

There is no question as to plaintiff's disability or that it results from degenerative disc disease of the lower spine caused by an industrial accident.[4]

Plaintiff commenced work for Pigeon Manufacturing Company in 1968. On February 13, 1969, an overhead spot welder assembly, weighing about 700 pounds, collapsed. It struck plaintiff a glancing blow across the lower back and right leg and ankle, throwing him to the floor and knocking him out. He was hospitalized briefly and off work for a few days.[5]

Plaintiff was referred to the Pigeon Clinic by his employer and was treated there for his injuries during the period from February 14, 1969, until March 11, 1969. When plaintiff returned to work, he was assigned to favored employment for an undisclosed period of time before resuming his regular work as a spot welder. On February 4, 1970, he again returned to the Pigeon Clinic with complaints of back and leg pain. In March he was referred to the Bay Neurosurgical Clinic where a myelogram disclosed a markedly herniated disc at L4-L5. A laminectomy was performed and the disc was removed by Dr. Z. E. Taheri.[6] Subsequently, he was seen by Dr. Walker[7] and then by Dr. James A. Devlin, who performed a second operation on plaintiff's lower spine late in 1970. The WCAB found plaintiff justified in declining further at-

[4] The condition existed at the fourth and fifth lumbar and first sacral vertebrae. Two surgical attempts to stabilize those vertebrae by laminectomy and fusion have failed, and plaintiff was held to be justified in declining the risk of another attempt at spinal fusion.

[5] It was argued that the injury was so inconsequential that plaintiff missed no time whatever, an erroneous conclusion probably derived from the fact that the time cards show that he was paid for the time off. Close examination of the cards and the testimony of the employer's general manager as to office absence records confirm that he was off work after the accident. Plaintiff testified he was off for three days.

[6] Dr. Taheri was not a witness.

[7] Dr. Walker was not a witness.

tempts at spinal surgery to alleviate his symptoms and stabilize his back. His last day of work at Pigeon Manufacturing was March 3, 1970.

Michigan has adopted the view previously stated in 3 Larson, Workmen's Compensation Law, § 95.12, pp 508.130-508.133, now found at 4 Larson, Workmen's Compensation Law, § 95.12, pp 17-71—17-78, and cited in *Mullins v Dura Corp,* 46 Mich App 52, 55-56; 207 NW2d 404 (1973), and *Dressler v Grand Rapids Die Casting Corp,* 402 Mich 243, 253-254; 262 NW2d 629 (1978):

"The Massachusetts-Michigan rule in successive-injury cases is to place full liability upon the carrier covering the risk at the time of the most recent injury that bears a causal relation to the disability.

"If the second injury takes the form merely of a recurrence of the first, and if the second incident does not contribute even slightly to the causation of the disabling condition, the insurer on the risk at the time of the original injury remains liable for the second. In this class would fall most of the cases discussed in the section on range of consequences in which a second injury occurred as the direct result of the first, as when claimant falls because of his crutches which his first injury requires him to use. This group also includes the kind of case in which a man has suffered a back strain, followed by a period of work with continuing symptoms indicating that the original condition persists, and culminating in a second period of disability precipitated by some lift or exertion.

"On the other hand, if the second incident contributes independently to the injury, the second insurer is solely liable, even if the injury would have been much less severe in the absence of the prior condition, and even if the prior injury contributed the major part to the final condition. This is consistent with the general principle of the compensability of the aggravation of a preexisting condition."

The applicability of the rule has been blurred

somewhat by the willingness of the Michigan courts to treat a physical deterioration following an original injury as an "injury not attributable to a single event" if there is evidence indicating that the physical demands of the employment aggravated the original injury. *Gilbert v Reynolds Metals Co,* 59 Mich App 62; 228 NW2d 542 (1975); *Hughes v Lakey Foundry Corp,* 91 Mich App 170; 284 NW2d 135 (1979); *Dressler v Grand Rapids Die Casting, supra.* Indeed, as noted in *Derwinski v Eureka Tire Co,* 407 Mich 469; 286 NW2d 672 (1979), degenerative disc disease can develop from the prolonged wear and tear of heavy lifting without any single traumatic injury.

It is not easy, then, to determine the date of injury as to any given back condition resulting in disability and to know whether the case is governed by *Mullins* or by *Gilbert.*

The date of injury is a question of fact, *Porter v Great Lakes Steel,* 114 Mich App 293, 298; 318 NW2d 646 (1982), and the findings of fact of the WCAB are conclusive if there is any competent evidence to support them. MCL 418.861; MSA 17.237(861); *Johnson v Vibradamp Corp,* 381 Mich 388; 162 NW2d 139 (1968); *Braxton v Chevrolet Grey Iron Foundry Div of General Motors Corp,* 396 Mich 685; 242 NW2d 420 (1976).[8]

The specific finding of the WCAB herein was that plaintiff sustained an injury in 1968 which was worsened by aggravation in the performance of his duties of employment. That finding was based, it was said, on the plaintiff's testimony and that of the experts.

Plaintiff's testimony was that he suffered pain in his lower back and right leg after the 1969 acci-

---

[8] *Dressler v Grand Rapids Die Casting Corp, supra,* suggests that such evidence must also be "substantial".

dent for which he was treated at the Pigeon Clinic. He did not discontinue his visits to the clinic because he felt better but because he became angry because the clinic doctors did not believe his complaints of back pain. He went thereafter to see his personal physician, Dr. Sorenson.[9] He testified that, although he went back to work, he was never free of pain in his lower back and right leg.

While plaintiff was easily led by the attorneys and said that the pain was "on and off" and that it bothered him in bending and lifting, he was consistent in his testimony that this had been a continuous condition since the 1969 accident. It is clear that there was no specific incident in 1970 to add to his existing condition, and nowhere in his testimony did he say or suggest that the pain gradually worsened or that his condition when he finally went back to the Pigeon Clinic was worse than it had previously been. To the contrary, his testimony seems clear that the condition was constant and that he simply reached the point on February 4, 1970, where he had had enough and was not content to put up with it any longer.

Nor can we find that the testimony of the experts proved a worsening of plaintiff's condition caused by his employment duties. Dr. Charles Townley saw plaintiff in 1975 and testified shortly thereafter. His testimony focused on plaintiff's employability at that time and whether surgery for a third time was appropriate. He was not asked for, nor did he give, an opinion bearing on

---

[9] Dr. Sorenson was not a witness.

While the medical evidence leaves something to be desired, it must be recognized that the evidence was taken on different occasions over a period of years and that the principal thrust of the inquiry went to the extent and permanence of disability and the feasibility of further surgery rather than to the question of on-the-job aggravation of a condition caused by the original trauma.

the date of injury. The same was true as to Dr. Max Newman, who also saw plaintiff in 1975.

During plaintiff's treatment at the Pigeon Clinic in 1969, he was treated by three different physicians, none of whom testified. Another physician affiliated with the clinic and who saw plaintiff in 1970, Dr. Robert Willits, was allowed to testify as to the 1969 conclusions of his colleagues from their notes, which notes were made an exhibit.[10] The February 14, 1969, notation of admitting diagnosis was "contusion, lumbo-sacral area". It appears that medication had been prescribed when plaintiff was taken to the hospital on the 13th, and the only other treatment over the next three and a half weeks consisted of diathermy treatments. A notation that X-rays showed no abnormality in the lumbo-sacral spine is not persuasive that there was an absence of disc pathology since a similar report appears in the clinic notes as to X-rays taken at the clinic in 1970 when there was in fact such pathology which necessitated spinal surgery shortly thereafter. Likewise, testimony by Dr. Willits that Dr. Dixon, who saw plaintiff on February 14, made no notation of muscle spasm in the lower back and would have done so had he found any is not persuasive that the accident was not sufficiently traumatic to the spine to cause spasm since the clinic notes of the examining physician on March 11th indicates "back quite tender", a condition that Dr. Willits said was indicative of spasm.

The WCAB pointed to testimony of Dr. Willits that it was possible for work such as plaintiff performed to exacerbate and contribute to the

---

[10] Dr. Willits' recital of the opinions of those doctors, derived by him from their notes, was objected to on hearsay grounds, which objection would appear to be well taken. Moreover, as noted hereafter, we do not find in the clinic notes the evidence which the WCAB thought was contained therein to support its finding.

condition of plaintiff's lower back. That is not quite what Dr. Willits said,[11] and the acknowledgment of a mere possibility is not, in any event, proof of actuality.[12] Nor do we find in the 1969 clinic notes the proof that the WCAB says is found therein of "an entirely new plateau of impairment" by 1970. The clinic's referral of plaintiff to the Bay Neurosurgical Clinic for a myelogram in March, 1970, was because of the "persistence of symptoms for over a year".

Dr. James A. Devlin, an orthopedic surgeon to whom plaintiff was referred late in 1970, performed the second operation on plaintiff's back. His testimony, on which the WCAB relied, has the same lack of substance. The WCAB said:

"Dr. James A. Devlin also responded to a reasonably accurate hypothetical that the work plaintiff performed post injury could possibly aggravate the condition existing in plaintiff's back as a result of the original injury."

Apart from the inadequacy of a finding based on a mere possibility, it should be noted that the hypothetical question referred to was not reasonably accurate. It assumed that plaintiff lost no time from work whatsoever, it assumed continuation on the same job without a period on lighter work, and it assumed that on February 1, 1970, pain in plaintiff's back became much worse. The question

[11] To the question, "Do you feel that the work that he did from February 13, 1969, could have caused or aggravated or accelerated or exacerbated or precipitated the necessity of treatment and surgery performed by Dr. Taheri, that being a laminectomy at L4-L5?" Dr. Willits answered: "My answer is that anything is possible."

[12] Dr. Willits also testified that plaintiff was not disabled until 1970 because he kept working until then, but also noted that pain tolerance is fantastically variable from person to person. He further testified that lifting and straining can precipitate more symptomatology from a chronic back problem, but that is not the same as saying that it could or did cause a different or further back problem.

then asked what role the "incident" of February 1, 1970, or the continual nature of plaintiff's work in early 1970 might have had on his condition as Dr. Devlin found him. on the application of the one-year-back rule. Dr. Devlin's response was that it was possible that the "incident" could cause an aggravation of a previous existing condition in his back. There was, of course, no "incident" on February 1, 1970.

Again, apparently assuming some incident on February 1, 1970, Dr. Devlin pointed out that, while it was possible that what plaintiff "did" on that day could have aggravated an existing back condition, he could not say that it did and that it was equally possible that so simple an act as getting out of a car could aggravate an existing back condition. Dr. Devlin also testified that the severe degenerative changes which he found at L4-L5 had obviously existed for a long period of time. He also testified that the continuing symptoms related by the plaintiff indicated that the original condition caused by the 1969 injury had persisted.

On this record, we believe that there has been one identifiable injury, that of February 13, 1969, causing a degenerative disc disease which continued unchanged thereafter; that the symptoms of the disease continued, their presence when work tasks were performed merely evidencing the continuation of the condition; and that there is no evidence to support the WCAB's finding that the condition was aggravated by the physical efforts of employment. The case is thus governed by *Mullins v Dura Corp, supra.*

Reversed and remanded for entry of an appropriate order.

Bronson, J., concurred.

Danhof, C.J. *(dissenting)*. I dissent from the majority's opinion because I disagree with the holding that the Workers' Compensation Appeal Board (WCAB) erred in finding that plaintiff's disability arose from the subsequent aggravation of the February 13, 1969, accident.

On appeal, findings of fact made by the WCAB are binding if the record discloses any evidence on which such a finding could be based. *Kostamo v Marquette Iron Mining Co,* 405 Mich 105, 135-136; 274 NW2d 411 (1979); *Derwinski v Eureka Tire Co,* 407 Mich 469, 481; 286 NW2d 672 (1979). The Supreme Court has also phrased this standard of review in terms of whether there is "any competent evidence" in the record to support the WCAB's findings. *Aquilina v General Motors Corp,* 403 Mich 206, 213; 267 NW2d 923 (1978). Reversal is warranted, therefore, only when there is no competent evidence in the record to support the WCAB's factual findings. This is not the situation in the present case.

While there were some language problems, making the plaintiff's testimony appear confused at times, his testimony as a whole is clear that while he suffered some pain from the date of the initial injury on, the pain became worse in February, 1970. Plaintiff testified on direct examination that the pain in his leg and back would "come and go" prior to February, 1970, at which time the pain became constant. The continuous pain did not subside before plaintiff had his first surgery. While plaintiff was never completely without pain, he testified that the pain became worse with time. In 1970 the pain became continuous.

Plaintiff testified that he missed approximately ten days of work after the initial injury, then he returned to work at a lighter job, bench welding.

Although plaintiff was able to sit while performing this work, the job still required him to bend and stoop and use his right foot to operate the welder. After a period of time at this job, plaintiff returned to his usual work as a gun welder. Gun welding required the plaintiff to stand and weld parts onto a 25- to 30-pound automobile seat which plaintiff would pick up from the floor and place on a bench. Dr. Willits, a treating physician at the Pigeon Clinic, testified that it was possible that plaintiff's employment from the period of the initial injury through February, 1970, caused further degeneration to plaintiff's back.

While I agree with the majority that the evidence supporting the WCAB's factual findings was less than overwhelming, I am unable to conclude on this record that there was no competent evidence to support the findings. Reversal is therefore unwarranted on this issue.

Since I would affirm the WCAB's factual findings, defendant Citizens Insurance Company's second issue must be addressed. Citizens argues that the WCAB erred in applying the one-year-back rule to limit reimbursement of Citizens by Employers to benefits paid to plaintiff within one year of the petition for determination of rights filed by Citizens. Citizens argues that the one-year-back rule was improperly applied because it was neither raised by Employers before the hearing referee nor briefed by Employers before the WCAB. The one-year-back rule was raised as a defense by Employers in its application for review of claim. Citizens additionally argues that the one-year-back rule applies only to situations where a carrier or employer seeks reimbursement from an employee.

I find Citizens' initial argument on the one-year-back rule to be correct and therefore do not ad-

dress the merits of the issue of application of the one-year-back rule. The Supreme Court has held that the one-year-back rule, MCL 418.833; MSA 17.237(833), is a defense akin to the statute of limitations and may be waived. *Kleinschrodt v General Motors Corp,* 402 Mich 381; 263 NW2d 246, *reh den* 402 Mich 965 (1978). In *Kleinschrodt,* the defendant did not raise the one-year-back rule before the hearing referee or the WCAB. The WCAB applied the rule *sua sponte.* The Supreme Court reversed, holding that the defendants had waived the defense of the one-year-back rule by failing to raise it before the WCAB. *Kleinschrodt, supra,* p 384.

In *Kingery v Ford Motor Co,* 116 Mich App 606; 323 NW2d 318 (1982), this Court extended the reasoning employed in *Kleinschrodt* and held that the WCAB did not err in refusing to apply the "two-year-back" rule, MCL 418.381(2); MSA 17.237(381)(2), because the defendant did not raise the defense before the hearing referee. The two-year-back rule is similar to the one-year-back rule in that it precludes benefits prior to two years before an application for initial benefits. Because the one-year-back rule is a defense akin to a statute of limitations defense, Employers' failure to raise it before the hearing referee precludes its application by the WCAB whether it be by request or *sua sponte.* In my opinion, the WCAB erred in applying the one-year-back rule to limit the amount that Employers must reimburse Citizens.

I would affirm the WCAB's factual findings and reverse.